The TOWN OF LEO–CEDARVILLE, Indiana, Appellant–Petitioner,

v.

The INDIANA ALCOHOLIC BEVERAGE COMMISSION, Appellee–Respondent,

and

Pat & Larry's of Leo, Inc., Appellee–Intervenor.

No. 49A05–0005–CV–201.

Court of Appeals of Indiana.

Sept. 13, 2001.

Patrick L. Proctor, Fort Wayne, IN, Attorney for Appellant.

Joseph F. Quill, Nancy G. Endsley, Landman & Beatty, Indianapolis, IN, Attorneys for Appellee Pat & Larry's of Leo, Inc.

## OPINION

SULLIVAN, Judge.

Appellant, the Town of Leo–Cedarville (Town), appeals the trial court's ruling upholding the Indiana Alcoholic Beverage Commission's (ABC) decision to renew Pat & Larry's of Leo, Inc. (Pat & Larry's) liquor retailer's permit. The Town specifically contends that Ind.Code § 7.1–3–9–3 (Burns Code Ed. Repl.1996) prohibits the ABC from renewing an applicant's liquor retailer's permit if a town, with a population of less than 5,000, elects not to enact an enabling ordinance authorizing such permits. Because we conclude that the ABC did not have authority to renew Pat & Larry's permit once it became situated within the Town's boundaries, we reverse and remand for proceedings not inconsistent with this opinion.

Pat & Larry's is a restaurant located in Allen County. In April 1994, pursuant to Ind.Code § 7.1–3–20–12 (Burns Code Ed. Repl.1996), the ABC issued Pat & Larry's a three-way permit, allowing the restaurant to sell liquor, beer, and wine. The permit was designated a type 209 permit because at the time, Pat & Larry's was situated outside the boundaries of a town or city. Shortly before the permit was scheduled to expire on May 20, 1995, Pat & Larry's filed a renewal application which was approved in April 1995.

At about the same time, a petition to incorporate the town of Leo–Cedarville was filed in Allen County.[1] Copies of the petition were sent to the Department of Commerce and to the Plan Commission "in accordance with IC 36–5–1–4(a)" and a public hearing was held. Record at 507. The Allen County Commissioners approved the petition on June 14, 1995, and conferred upon the Town "all of the rights, powers, duties, responsibilities, and liabilities granted to an incorporated town according to applicable state law." Record at 508.

In February 1996, before Pat & Larry's permit was to expire, the clerk/treasurer of Leo–Cedarville sent the ABC correspondence, informing it that Pat & Larry's was now situated within the Town's limits. Nevertheless, after making application to renew its permit, Pat & Larry's was issued another type 209 permit on April 26, 1996. That permit was scheduled to expire May 20, 1997.

On May 21, 1996, the town council met to decide, whether it, as a town with less than 5,000 people, would enact an enabling ordinance, authorizing the ABC to issue liquor retailers' permits [2] to applicants sit-

---

**1.** "Proceedings to incorporate a town may be instituted by filing a petition in quadruplicate with the executive of each county in which a part of the territory sought to be incorporated is located. The petition must be signed by at least fifty (50) owners of land in the territory and must state that: (1) the territory is used or will, in the reasonably foreseeable future, be used generally for commercial, industrial, residential, or similar purposes; (2) the territory is reasonably compact and contiguous;

(3) there is enough undeveloped land in the territory to permit reasonable growth of the town; and (4) incorporation is in the best interests of the citizens of the territory." Ind. Code § 36–5–1–2(a) (Burns Code Ed. Repl. 2000).

**2.** The holder of a liquor retailer's permit "shall be entitled to possess liquor and sell it at retail to a customer for consumption on the licensed premises." I.C. § 7.1–3–9–9. Without the permit, Pat & Larry's could not hold a

uated within the town.[3] The following day, the Town's clerk/treasurer sent the ABC a letter, informing the commission that it had elected not to pass an enabling ordinance. Though the town council reconsidered passing an enabling ordinance on January 7, 1997, it again concluded that it would not do so, and communicated its decision to the ABC.

On March 3, 1997, before its 1996 permit was to expire, Pat & Larry's again filed an application for renewal. A week later, Pat & Larry's, by counsel, sent the ABC a letter, requesting that Pat & Larry's type 209 permit be renewed as a type 210 permit, issued to businesses located within town or city limits. The letter erroneously indicated that Pat & Larry's came to be included within the Town's boundaries through the process of annexation rather than incorporation.

On April 1, 1997, the ABC notified the Town that it intended to process Pat & Larry's renewal application for a type 210 permit. The ABC explained that "[i]n all other instances where a town or city annexes the premises of a permittee, the ABC allows the permittee to convert their type 209 to a type 210 permit, and we give them the opportunity to file renewal applications for their type 210 permit." Record at 60.

In response to the ABC's letter, the Town informed the ABC that it intended to appeal the commission's decision to renew Pat & Larry's permit and requested that the commission set the matter for hearing. On May 27, 1997, and June 23, 1997, the Allen County local board of the

ABC conducted a hearing with regard to Pat & Larry's renewal application. Town council members appeared at the hearing and remonstrated against the petition. They asserted that the ABC did not have authority to renew Pat & Larry's permit because the Town, which has a population of less than 5,000, did not pass an enabling ordinance authorizing the issuance of such permits. Despite the objections, on June 23, 1997, the local board voted to renew the permit.

Thereafter, on June 26, 1997, the Town filed a Petition to Intervene and objections with the ABC. Eventually, a hearing was held on March 23, 1998. The hearing judge took administrative notice of the entire file from the local board hearing, the ABC file and Pat & Larry's file. Counsel for Larry Parrish, owner of Pat & Larry's, then proceeded to call as witnesses Parrish, town council member Tom Weaver, and former vice chair person for the ABC John Murphy. Counsel for the Town did not present witnesses but submitted as exhibits the ordinance showing that the Town had been incorporated and the most recent census establishing that the Town's population was less than 5,000.

On September 3, 1998, the hearing judge entered findings of fact and conclusions of law recommending that the ABC approve the renewal of Pat & Larry's permit. The ABC approved and adopted the hearing judge's findings and conclusions. As a result, on December 8, 1998, the Town sought judicial review of the ABC's decision.[4] Following a hearing on March 15,

three-way permit and, therefore, would be permitted to sell only beer and wine.

3. Indiana Code § 7.1–3–9–3 gives towns, with a population of less than 5,000, the authority to decide whether liquor retailers' permits may be issued to businesses located within a town's boundaries. Since its incorporation, Leo–Cedarville has had less than 5,000 resi-

dents. As of January 6, 1997, the Town had a population of 2,391. At oral argument on May 17, 2001, counsel for the Town indicated that based upon the most recent census, the Town now has a population of 2,782.

4. The petition was originally filed in the Allen Superior Court and later transferred to the Marion Superior Court.

2000, the trial court upheld the ABC's decision. Thereafter, the Town initiated this appeal, and this court held oral argument on May 17, 2001.

The Administrative Orders and Procedures Act governs judicial review of determinations of the ABC. Ind.Code § 4–21.5–2–6(2) (Burns Code Ed. Repl.1996). Thus, "[t]he validity of agency action shall be determined in accordance with the standards of review provided in [I.C. 4–21.5–5–14]...." I.C. § 4–21.5–5–14. The party challenging the agency action bears the burden of establishing the invalidity of the agency action. I.C. § 4–21.5–5–14(a). The reviewing court may grant relief only if the court determines that the agency action is:

"(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence." I.C. § 4–21.5–5–14(d).

■■■ This court stands in the same position as the trial court. *Hanley v. Eastern Indiana Inv. Corp.*, 706 N.E.2d 576, 578 (Ind.Ct.App.1999), *trans. denied.* We may not review the agency decision de novo or substitute our judgment for the agency's judgment. I.C. § 4–21.5–5–5–11. We review the record in the light most favorable to the administrative proceedings and do not reweigh the evidence. *Hanley,* 706 N.E.2d at 578. Further, we will not reverse an administrative finding of fact unless "it conclusively appears that the evidence upon which the decision was made was devoid of probative value or so proportionately inadequate that the finding could not rest on a rational basis." *Id.;*

see also *Indiana Alcoholic Beverage Comm'n v. Edwards,* 659 N.E.2d 631, 632 (Ind.Ct.App.1995).

As the party asserting the invalidity of the agency action, the Town claims that the ABC exceeded its statutory jurisdiction in renewing Pat & Larry's liquor retailer's permit because the Town elected not to enact an enabling ordinance authorizing the issuance of liquor retailers' permits to businesses situated within the Town's limits. In making this assertion, the Town relies upon I.C. § 7.1–3–9–3, which provides as follows:

"**Cities or towns under 5,000—Ordinance authorizing permit issuance.—** The legislative body of a city or town that has a population of less than five thousand (5,000) shall have the power and jurisdiction to enact an enabling ordinance consenting that liquor retailer's permits may be *issued* to applicants in respect to premises located within the city or town." (emphasis supplied).

Pat & Larry's initially responds that we need not address the Town's contention because the ABC determined that the evidence did not conclusively establish that the restaurant was located within the Town's boundaries. Noting that this court is not permitted to reweigh the evidence, Pat & Larry's contends that the ABC's ruling may be sustained upon this basis. In the alternative, Pat & Larry's claims that although I.C. § 7.1–3–9–3 prohibits the ABC from issuing new permits to applicants situated within the Town's boundaries, it does not prohibit the ABC from renewing existing retailers' liquor permits. Because the Town's contention is relevant only if the evidence shows that Pat & Larry's is located within the Town's boundaries, we first address that contention.

Pat & Larry's points to the following findings of fact and conclusions of law

which were made by the ABC with regard to Pat & Larry's inclusion within the Town's boundaries:

### "FINDINGS OF FACT

\* \* \*

4. On March 3, 1997, Larry Parrish, acting on behalf of Applicant, filed an application for renewal of permit number RR02–92138. The Sleepy Owl is located at 15011 State Road 1, with a mailing address of Leo–Cedarville. The Town of Leo–Cedarville is a municipality which was incorporated under the laws of the State of Indiana on June 14, 1995, when the towns of Leo and Cedarville passed an ordinance consolidating the two (2) towns.

5. Both Leo and Cedarville were unincorporated towns prior to consolidation and incorporation.

6. There was no other area involved in the annexation (sic) except the designated unincorporated areas of Leo and Cedarville.

7. The business of the Applicant was outside those unincorporated areas of Leo and Cedarville which qua[lified] it for a 209 permit. The 'Ordinance to Incorporate the Town of Leo–Cedarville['] (Exhibit "A") does not designate any specific geographical territory and area which was the subject of the Ordinance, but it referenced the proposed Town of Leo–Cedarville as the general are[a] to be annexed (sic) and consolidated.

8. The Allen County Local Board, over the remonstrance, unanimously approved the renewal of the Applicant's 210 permit issued and renewed by the Commission. (Rec-

ord). The Applicant's premises [were] outside the area of Leo when the consolidation was approved. It is not conclusively demonstrated that the Applicant's premises are within the geographical territory annexed (sic) as Leo/Cedarville.

\* \* \*

### CONCLUSIONS OF LAW

\* \* \*

7. Leo Cedar[ville] has failed to conclusively show that the area occupied by the Applicant was included in the consolidation or annexation of the unincorporated areas of Leo and Cedarville and, therefore, the judgment of the Allen County Local Board adopted by the Commission cannot be reviewed on this basis." [5] Record at 185–87.

Without citing to any particular evidence or testimony which supports the ABC's finding, Pat & Larry's contends that upon appeal, this court must view the evidence in the light most favorable to the ABC's findings and conclusion. Pat & Larry's further contends that if these findings are "accepted as true" then this court must affirm the renewal of its permit. Appellee's Brief at 5.

▮▮▮ It is true that this court is not permitted to reweigh the evidence. However, if it conclusively appears that the evidence upon which the determination was made was devoid of probative value or so proportionately inadequate that the finding does not rest on a rational basis, or if there are no substantial facts to support the finding, then the finding will not be

---

5. It is not entirely clear what the ABC meant by concluding that the local board's decision "cannot be reviewed on this basis." Nevertheless, it is clear that the ABC found that the evidence did not conclusively establish that Pat & Larry's was located with the Town's boundaries following the incorporation of the Town.

sustained. *Edwards,* 659 N.E.2d at 635. Stated another way, an "administrative determination must be soundly based in evidence and inferences flowing therefrom." *Indiana Alcoholic Beverage Comm'n v. River Road Lounge, Inc.,* 590 N.E.2d 656, 659 (Ind.Ct.App.1992), *trans. denied.*

At the March 23, 1998 hearing before the hearing officer, both Larry Parrish, owner of Pat & Larry's, and town council member Tom Weaver testified concerning whether the restaurant was located within the Town's boundaries. While the colloquy between Parrish and his attorney reveals their confusion regarding how the restaurant came to be included within the Town's boundaries, it also demonstrates their conclusion that Pat & Larry's became part of the Town after it became a legal entity:

> "[Parrish's attorney]: Now there was a certain ordinance passed by the towns of Leo and Cedarville, ... [o]n the 14th day of June in 1995, concerning the consolidation of these two towns. Now where is your place located in regards to those two towns?
>
> Parrish: I would be at the north edge of town. I would be approximately¼ of a mile from the north boundary.
>
> [Parrish's attorney]: Of what town is that?
>
> Parrish: Leo–Cedarville.
>
> [Parrish's attorney]: That's Leo? Well actually Leo. Is that what you are saying?
>
> Parrish: Um hum.
>
> [Parrish's attorney]: You were outside the limits of Leo at that time. Is that right?
>
> Parrish: Um hum.
>
> [Parrish's attorney]: The consolidation, the consolidation of these towns not only consolidated them but annexed (sic) this area that you are in. Is that correct?
>
> Parrish: Yes.

> [Parrish's attorney]: *Is the area that you are in,* is that generally part of the town as the annexation (sic) provided? *Is that part of the new town of Leo–Cedarville?*
>
> Parrish: *Yes.*"

Record at 445–46 (emphases supplied).

Following Parrish's testimony, Weaver testified and clarified that there had been no consolidation or annexation but an incorporation of the two unincorporated areas commonly referred to as Leo and Cedarville. Weaver further testified that following the incorporation of the Town, Pat & Larry's was included within the Town's boundaries:

> "[Parrish's attorney]: When they consolidated Leo, the two towns ...
>
> Weaver: They incorporated, not consolidated.
>
> [Parrish's attorney]: They consolidated them, didn't they? They were already towns. Were they not?
>
> Weaver: No they were not.
>
> [Parrish's attorney]: They were not incorporated?
>
> Weaver: No they were not.
>
> [Parrish's attorney]: Neither one of them?
>
> Weaver: No they were not.
>
> [Parrish's attorney]: So now they are an incorporated town?
>
> Weaver: That's correct.

\* \* \*

> [Parrish's attorney]: To give a geographical idea of Leo and Cedarville, the unincorporated areas, is there an area between those two that was incorporated and part also annexed into the town as it was incorporated?
>
> Weaver: There's never been any annexation.

[Parrish's attorney]: There has never been any annexation?

Weaver: No. No.

[Parrish's attorney]: Well then if there has been no annexation and the permit was outside a town, was outside the town, then if there was no annexation that was involved, then why are you complaining about it? He ... still outside of town, theoretically, if there was no annexation.

Weaver: Will you rephrase your question? I'm not sure what it is you are asking me.

[Parrish's attorney]: You're telling me there was no annexation here. Is that correct?

Weaver: Yes.

[Parrish's attorney]: Mr. Parrish's business is located outside the one unincorporated area. Is that correct? It was, prior to the consolidation.

Weaver: Prior to, yes.

[Parrish's attorney]: You said it was a consolidation, not an annexation. Is that correct?

Weaver: Incorporation is the legal term.[6]

[Parrish's attorney]: Okay. If there was no annexation in your opinion, the area where Mr. Parrish's is was not annexed. Was it?

[Town's attorney]: There was no annexation.

* * *

Weaver: I'm at a loss of what you are trying to get from me. I don't understand what you are asking. Let me say this. Before incorporation, there was not a corporation and Larry's business existed. Yes. We incorporated. When we incorporated[,] his establishment was with[in] the boundaries of our corporation. ... " Record at 470, 473–75.

 Thus, while the evidence reveals that the restaurant may have been situated outside the unincorporated area of Leo prior to the Town becoming a legal entity, following the incorporation of the Town, it is uncontradicted that the restaurant was located within the Town's boundaries. Even in his March 1997 letter to the ABC, Parrish asked the ABC to convert his permit from a type 209 permit to a type 210 permit because he believed his business was now located within the Town's boundaries.[7] Given this evidence and the lack of evidence showing that Pat & Larry's was located outside the Town's boundaries following incorporation of the Town, we can-

6. Weaver's testimony that the Town was incorporated is supported by the "Ordinance to Incorporate the Town of Leo–Cedarville" which was offered into evidence by the Town as an exhibit at the March 23, 1998 hearing. Record at 507. The ordinance refers only to the incorporation process set forth in I.C. § 36–5–1–1.

7. "We are herewith submitting for processing the above permit as a # 210 type. The permit at these premises has existed as a three-way # 209 permit, one qualifying outside town or city limits for retail sale of spirituous, vinous and malt beverages, for the past five years. It exists outside the town limits of Leo, Indiana.

Within the past year or so, *the town annexed (sic) the area in which the above permit is located*. Heretofore, the Commission, where such annexation (sic) took place, converted the 209 permit to a # 210 permit. The attached application of the permittee, directed to it by the Commission, distinctly shows that the permittee is entitled to the # 210 type. Buttressing this is the Commission action of October 1, 1996 wherein the Commission unanimously approved the conversion after being advised of the annexation. (sic) This has been the historical process notwistanding the reluctance of the Town Board of Leo–Cedarville (its present name) to pass an enabling ordinance. All of these possibilities should have been considered by the town when it annexed (sic) the area." Record at 58.

not say that the ABC's determination is soundly based upon evidence.

Having concluded that the ABC's finding concerning Pat & Larry's location cannot sustain the ABC's decision, we must now consider whether the ABC had authority to renew Pat & Larry's permit in light of I.C. § 7.1–3–9–3. It is the Town's position that once Pat & Larry's became situated within the Town's boundaries, the ABC lost its authority to renew Pat & Larry's permit because the Town elected not to enact an enabling ordinance. Pat & Larry's agrees that Section 3 prohibits the ABC from issuing new permits without the Town's consent, but claims that it does not similarly restrict the ABC with regard to renewal applications. According to Pat & Larry's, the legislature intended to treat renewal applications separate and apart from new applications as evidenced by I.C. § 7.1–3–19–9.5(a), which requires the ABC to provide renewal applicants the opportunity to file a simplified application, and subsection (b) which affords renewal applicants the option not to appear before the local board for renewal hearings. Pat & Larry's also seems to suggest that because "[t]he action of the commission on the application for a retailer's or dealer's permit of any type shall be final," a permit which was initially approved, should be renewed as a matter of course. I.C. § 7.1–3–19–10. Pat & Larry's also claims that I.C. § 7.1–3–9–6, which prohibits a town from enacting an ordinance which interferes with a permit holder's right to operate under the permit, prevents the ABC from denying its renewal application.[8] Finally, Pat & Larry's contends that the ABC's action was proper because it was the commission's policy to convert type 209 permits to type 210 permits when a business became part of a town or city, and that to not renew its permit violates public policy because it discourages business owners from establishing restaurants outside city or town limits.

Whether the legislature intended to create an exception for pre-existing permit holders of liquor retailers' permits under Section 3 is a matter of statutory interpretation, which is the province of the judiciary. *Indiana Dep't of Natural Resources v. Town of Syracuse,* 686 N.E.2d 410, 411 (Ind.Ct.App.1997); *Ad Craft, Inc. v. Board of Zoning Appeals of Evansville and Vanderburgh County,* 693 N.E.2d 110, 113 (Ind.Ct.App.1998), *trans. denied.* The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Town of Syracuse,* 686 N.E.2d at 412. This is accomplished by examining the statutory language. *Meier v. American Maize–Products Co., Inc.,* 645 N.E.2d 662, 667 (Ind.Ct.App.1995). Words from a particular section of the statute may not be construed in isolation but with all other sections of the act. *Town of Syracuse,* 686 N.E.2d at 412. "We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* For the reasons stated below, we conclude that although Section 3 refers only to the issuance of permits and not specifically to renewals, it nonetheless applies to renewal applicants.

With regard to its first two claims, Pat & Larry's is essentially claiming that Section 3 does not apply to renewal applicants because they have already been sub-

---

**8.** That section specifically provides that a city or town "shall not enact an ordinance which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit as provided in this title" or prevents or inhibits the holder of a liquor retailer's permit from "being qualified to obtain or continue to hold the permit, or operate to interfere with or prevent the exercise of the permittee's privileges under the permit." I.C. § 7.1–3–9–6.

ject to a rigorous application process which has resulted in a final agency action. While we agree that the legislature contemplated providing a streamlined procedure for filing renewal applications, it did not intend to otherwise create distinctions between the issuance of new permits and the renewal of pre-existing permits.

First, the provisions of Title 7.1, which grant the ABC power to issue permits, refer to the power to issue and not specifically to the power to renew. For example, I.C. § 7.1–2–3–9, which discusses the powers of the ABC, provides that "[t]he commission shall have the discretionary authority to issue, deny, suspend, revoke, or not renew all permits authorized by this title...." Notably, Section 9 does not specifically authorize the renewal of permits; it refers to the power to issue. More notable, however, is the grant of power to "not renew." The use of this term unmistakably connotes that the legislature intended for the authority to issue to include the power to renew.

This interpretation is supported by a similar provision set forth in the chapter governing liquor retailers' permits. Indiana Code § 7.1–3–9–1 provides that "[t]he commission may issue a liquor retailer's permit to a person who desires to sell liquor to customers for consumption on the licensed premises." Were we to adopt Pat & Larry's reading of Section 3, Section 1 could be read to confer upon the ABC only the authority to issue new permits. However, as there is no parallel provision specifically giving the ABC the power to renew liquor retailers' permits, such a reading seems improbable.

The aforementioned provisions must also be read in conjunction with I.C. § 7.1–3–1–3, which sets forth the duration of a permit. Unless otherwise provided, permits are in effect for one calendar year, after which they become "fully expired and null and void." I.C. § 7.1–3–1–3. By placing a time limitation upon a permit and rendering the permit void after a year, the legislature must have intended to allow the ABC to reevaluate the permit and either reissue the permit or not renew it.[9]

Even were there an uncertainty, another provision of Title 7.1 supports this court's interpretation by demonstrating that had the legislature intended to exclude renewal applicants from Section 3, it could have done so. Chapter 20 of Article 3 discusses the issuance of permits to clubs, statutorily defined as establishments "operated solely for objects of a national, social, patriotic, political, or athletic nature" and not "operated for pecuniary gain." I.C. § 7.1–3–20–1(e),(f). Section 8 of the same chapter contains a provision similar to Section 3, except that it also provides an exception for renewal applicants:

**"Enabling ordinance required in cities and towns of less than five thousand—Exceptions—**The commission shall require the enactment of an enabling ordinance as provided in IC 1971, 7.1–3–9, before issuing a *new* liquor retailer's permit to a club in a city or town that has a population of less than five thousand (5,000). *This section shall not apply to the renewal of an existing permit* nor shall it apply to a fraternal club [defined in Section 7]." (emphases supplied).

By including the language emphasized above, the legislature made explicit its intent to exclude pre-existing permit holders. Section 3 of Chapter 9, however, is devoid of any similar language. Therefore, the legislature must have intended for Section 3 to apply to renewal appli-

---

**9.** An argument could be made that all successive permits issued to a permittee are newly issued permits and not a renewal of the expir-ing permit. Such an exercise in semantics, however, serves no procedural or substantive purpose.

cants. *See Peele v. Gillespie*, 658 N.E.2d 954, 958 (Ind.Ct.App.1995) ("[I]t is just as important to recognize what a statute does not say as it is to recognize what it does say."), *trans. denied.*

Finally, to adopt Pat & Larry's interpretation of Section 3 would lead to absurd results and thwart the intention of the legislature. By giving small towns authority to decide whether to enact an enabling ordinance, the legislature obviously desired to give towns control over whether liquor is sold within their boundaries. This intent is carried out in Sections 4 and 5, which allow a town, which previously decided to enact an ordinance, the opportunity to repeal that ordinance after two years and sixty days. *See* I.C. § 7.1–3–9–4, 5. Once the ordinance is repealed, the holder of a valid permit must cease operation under the permit within ninety days. I.C. § 7.1–3–9–5. To adopt Pat & Larry's reading of the statute would require a town to pass an enabling ordinance only to repeal it, in order to compel Pat & Larry's to cease operating under its permit. Considering the legislature's intent to confer upon towns, with a population of less than 5,000, the authority to determine whether liquor is sold within the town's boundaries, such a result could not have been intended.

■ Given the legislature's clear intent, Pat & Larry's reading of Section 6 is also untenable. To be sure, that section prohibits a city or town from enacting "an ordinance which in any way, directly or indirectly, regulates, restricts, enlarges, or limits the operation or business of the holder of a liquor retailer's permit as provided in this title" or prevents or inhibits

the holder of a liquor retailer's permit from "being qualified to obtain or continue to hold the permit, or operate to interfere with or prevent the exercise of the permittee's privileges under the permit." I.C. § 7.1–3–9–6. However, it appears that the legislature's purpose was to prevent cities or towns from circumventing the required waiting period for repealing an ordinance or contravening the ABC's authority to validly issue permits.

Thus, while the ABC has broad authority to issue permits under Title 7.1, that authority is not unlimited. *See* I.C. § 7.1–2–3–9 (conferring upon the commission the authority to issue "all permits authorized by this title, *unless the exercise of discretion or authority is limited by applicable provisions of this title.*") (emphasis supplied). In this case, because the Town has not passed an enabling ordinance authorizing the issuance of liquor retailers' permits, the ABC simply did not have the authority to renew Pat & Larry's permit. As a result, the ABC's decision to renew Pat & Larry's liquor retailer's permit was void. *Indiana Air Pollution Control Bd. v. City of Richmond*, 457 N.E.2d 204, 207 (Ind.1983) (noting that an agency determination made without legislative authority is void).

Having so concluded, we further find that any policy the ABC may have had or still has with regard to converting type 209 permits to type 210 permits for businesses which become part of a city or town is simply inapplicable if the ABC does not have authority to act.[10] In addition, while there are seeming inequities and policy

10. Moreover, the relevance of former vice chair person Murphy's testimony is questionable. Murphy testified that it was the policy of the ABC to convert a 209 permit to a 210 permit after a business became situated within town or city limits by the process of annexation. Record at 440. First, as discussed above, Pat & Larry's became part of the Town through the process of incorporation, not annexation. However, even assuming the policy would be appropriate in either situation, Murphy conceded that he could not remember a time when the policy was applied to an applicant who had become part of a town with less than 5,000 people. Record at 443.

considerations which favor Pat & Larry's position, public policy considerations are left to the legislature and local governing bodies. *Chavis v. Patton,* 683 N.E.2d 253, 258 (Ind.Ct.App.1997). In this case, the legislature has made evident its intent to give small towns the authority to decide whether they will allow the sale of liquor within their boundaries. To seek the desired change, Pat & Larry's, and similarly situated businesses, may lobby the state legislature or the town council. Under these circumstances, however, the ABC was without authority to renew Pat & Larry's permit once it became situated within the Town's boundaries.

The judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

SHARPNACK, C.J., and ROBB, J., concur.