**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant–Defendant,**

v.

**TOWN OF SYRACUSE, Matt Vigneault as Manager for the Town of Syracuse, Jeanette Causey and Earl Grove, Appellees–Plaintiffs.**

No. 43A03–9701–CV–9.

Court of Appeals of Indiana.

Oct. 16, 1997.

Jeffrey A. Modisett, Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellant–Defendant.

Paul A. Stoelting, Syracuse, for Jeanette Causey and Earl Grove.

Jodie L. Miner, Ice Miller Donadio & Ryan, Indianapolis, for Town of Syracuse and Matt Vigneault, as Manager for the Town of Syracuse.

## OPINION

STATON, Judge.

The Indiana Department of Natural Resources ("DNR") appeals the grant of summary judgment in favor of the town of Syracuse, Matt Vigneault, as Manager of the town of Syracuse, Jeanette Causey and Earl Grove (collectively the "town"). The DNR raises three issues for our review, but we find dispositive the issue of whether seasonally anchoring augered pier posts into a lake bed constitutes alteration of the lake bed within the meaning of The Lake Preservation Act.[1] We answer the issue in the negative and affirm.

This case arises out of the placement of two piers on Syracuse Lake, a public freshwater lake in Kosciusko County. The piers were installed by Jeannette Causey and Earl Grove at the end of a street owned by the town of Syracuse.[2] In 1994, another riparian owner objected to the placement of the piers, attracting the attention of the DNR. The DNR informed the town that it would need permits for the placement of piers at the end of its street. The town ignored this and subsequent orders of the DNR, eventually leading to a hearing in front of an administrative law judge ("ALJ").

At the administrative hearing, the town challenged, *inter alia*, the DNR's authority to require the permitting of temporary piers. The ALJ determined that the DNR has the authority to require permits for temporary piers under IND.CODE § 13–2–11.1–5 (recodi-

fied at IND.CODE § 14–26–2–9) since the installation of augered poles supporting temporary piers "altered" the lake bed. The Natural Resources Commission affirmed the ALJ without modification. On appeal, the trial court reversed the Natural Resources Commission, finding that the temporary installation of these augered poles did not "alter" the lake bed.

■ When reviewing an administrative decision, courts are limited to determining whether the agency action is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to a constitutional right, power, privilege or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence. IND.CODE § 4–21.5–5–14 (1993). The authority of the State to engage in administrative action is limited to that which is granted by statute. *Charles A. Beard Classroom Teachers Assoc. v. Bd. of School Trustees of the Charles A. Beard Memorial School Corp.*, 668 N.E.2d 1222, 1224 (Ind.1996). This appeal concerns whether the DNR has the statutory authority under IC 13–2–11.1–5 to require permits for augered poles supporting temporary piers, which in turn depends upon the meaning of "alter" within that section.

An agency's interpretation of a statute which it is charged with enforcing is entitled to great weight. However, a reviewing court's deference to the agency's interpretation is not absolute. Courts may set aside an agency action 'not in accordance with law....' Law is the province of the judiciary, and courts rather than administrative agencies are charged with the responsibility to resolve questions of statutory construction.

*Mance v. Bd. of Directors of the Public Employee's Retirement Fund*, 652 N.E.2d 532,

---

1. IND.CODE §§ 13–2–11.1–1 to –15 (1993) (currently IND.CODE §§ 14–26–2–1 to –22 (Supp. 1995)).

2. For purposes of this appeal, the parties have agreed that the town of Syracuse is the riparian

owner where public streets meet the lake. We note, however, that whether the town is, in fact, the riparian owner is a matter being litigated in another action.

534 (Ind.Ct.App.1995), *reh. denied, trans. denied* (citations omitted).

The facts relevant to the resolution of this appeal are not in dispute. Therefore, we must determine whether the Commission's interpretation of IC 13–2–11.1–5 is correct. A statute should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.*, 600 N.E.2d 555, 558 (Ind.Ct.App. 1992), *adopted on transfer*, 608 N.E.2d 699 (Ind.1993). When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura*, 465 N.E.2d 215, 218 (Ind.Ct.App.1984), *trans. denied.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* We presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind. Ct.App.1992), *trans. denied.*

The portion of IC 13–2–11.1–5 relied upon by the DNR provides: "Upon application by the owner of land abutting a public freshwater lake, *the department may issue a permit to change the shoreline or alter the bed of a public freshwater lake* after investigating the merits of a written application...." (emphasis added). "Alter" is not defined. The DNR urges the adoption of a dictionary definition of alter: specifically, to change or modify. Under this definition, the DNR contends that securing posts two to three feet into a lake bed alters the lake bed by displacing silt and vegetation. Notwithstanding that the DNR admitted removing the posts restores the lake bed, the DNR

further suggests that this activity *could* destroy spawning eggs, *could* destroy vegetation and *could* upset "the delicate balance attained in the lake ecosystem." [3] Brief of Appellants at 9. Thus, the DNR concludes that "alter" within IC 13–2–11.1–5 means to change or modify in any manner whatsoever, thereby granting the DNR regulatory authority even over activities with a *de minimis* impact upon a lake bed.

We decline the DNR's invitation to attribute such a broad, generic, dictionary reading to the statute, preferring instead to ascertain the meaning of "alter" as used within the Act. We are not concerned with the definition of alter in the general sense; rather, our task is to ascertain its intended meaning within the context of the Lake Preservation Act. *Anton v. Davis*, 656 N.E.2d 1180, 1184 (Ind.Ct.App.1995), *reh. denied* (court is not to view statute in isolation, but must ascertain its effect by viewing it in context of entire Act).

A review of the Lake Preservation Act reveals that the legislature was contemplating the regulation of activities of a more violent and substantial nature than securing three-and-a-half inch posts two to three feet into a lake bed. IND.CODE § 13–2–11.1–3 (recodified at IND. CODE § 14–26–2–6 and IND.CODE § 14–26–2–7) requires a permit to change the water level or the shoreline of a public lake by excavating, filling in or otherwise changing the depth or area of the lake. This section also addresses the construction, cleaning or repair of a dam or ditch likely to affect the water level of a freshwater lake. IND.CODE § 13–2–11.1–6 (recodified at IND. CODE § 14–26–2–10 and IND.CODE § 14–26–2–11) requires public hearings prior to approving changing the level of a lake, dredging or mining activities in a freshwater lake. IND.CODE § 13–2–11.1–7 (recodified at IND. CODE § 14–2–26–12) regulates constructing channels into freshwater lakes. IND.CODE § 13–2–11.1–15 (recodified at IND.CODE § 14–26–2–16) addresses reservoirs formed by dams owned and operated by municipalities or public utilities.

---

**3.** We note that the DNR's calamitous hypotheticals are unsupported by any evidence in the record.

Too, IC 13–2–11.1–5 itself provides support for the conclusion that our legislature did not intend the word alter to encompass the activities at issue in this case. *See Wilson v. Pleasant,* 660 N.E.2d 327, 337 (Ind.1995), *reh. denied* (clauses relating to portion of the statute being construed must be considered). IC 13–2–11.1–5 requires as a condition precedent to receiving a permit for altering a lake bed that "the applicant must, in writing, acknowledge that all additional water area so created is a part of the lake and dedicate it to the general public use." Thus, the statute is intended to regulate alterations of a magnitude that create additional water area. We do not believe that our legislature intended to require riparian owners, who displace what can be no more than a few cubic millimeters of silt, to dedicate to the general public in writing the corresponding *de minimis* increase in the lake level. We conclude that the DNR has no statutory authority under IC 13–2–11.1–5 to require permits for the seasonal installation of piers utilizing augered pier posts.

We affirm the decision of the trial court and remand to the Natural Resources Commission for further proceedings not inconsistent with this opinion.[4]

HOFFMAN and KIRSCH, JJ., concur.

4. The trial court remanded this case to the Natural Resources Commission with instructions to enter judgment in favor of the town. However, IND.CODE § 4–21.5–5–15 limits a reviewing court's authority to provide relief under IC 4–21.5–5–14. We may only remand for further proceedings or, in the event agency action is unreasonably delayed or unlawfully withheld, compel agency action. IC 4–21.5–5–15. In this case, the sole relief we may grant is to remand for further proceedings. *Firth,* 590 N.E.2d at 160.