Francis INGRAM, Appellant–Plaintiff,

v.

CITY OF INDIANAPOLIS, Appellee–Defendant.

No. 49A02–0106–CV–370.

Court of Appeals of Indiana.

Dec. 18, 2001.

John F. Kautzman, Ruckelshaus, Roland, Kautzman, Blackwell & Hasbrook, Indianapolis, IN, Attorney for Appellant.

Anthony W. Overholt, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Francis Ingram ("Officer Ingram") appeals the trial court's declaratory judgment order in favor of the City of Indianapolis, Indiana (the "City"). We reverse.

### Issue

The sole issue on appeal is whether the City has a duty to defend Officer Ingram.

### Facts and Procedural History

The facts of this case are not in dispute. Officer Ingram is a City police officer. On

November 22, 2000, Officer Ingram was sued by Marla Williams ("Williams") in Federal court.[1] Williams is a dancer at an adult nightclub in Indianapolis. In Williams's lawsuit she complains that Officer Ingram, on two separate occasions, violated her constitutional rights. More specifically, Williams's federal complaint alleges that Officer Ingram, acting under the color of state law as a police officer, improperly detained her and solicited sexual favors from her. The City initially entered its appearance for Officer Ingram in Federal court, but subsequently moved to withdraw from the case and now refuses to defend him.

On March 2, 2001, Officer Ingram sought a declaratory judgment in state court obligating the City to defend him in the federal action. Officer Ingram's complaint relied upon the indemnity and defense provisions of Municipal Code section 292–1(a). The trial court ruled in part as follows:

> The general nature of authorized conduct for Ingram, as a police officer, will never include watching, stopping, and detaining an exotic dancer, after she gets off work, on two occasions, on false pretenses in order to have sex. Therefore, Ingram's acts are not within the scope of his employment, or arising out of the performance of his official duties and responsibilities.

(App. 37.) Assuming Officer Ingram's guilt, the trial court declared that the City did not have a duty to defend Officer Ingram. This appeal ensued.

### Discussion and Decision

#### Standard of Review

 Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment, or decree. IND.CODE § 34–14–1–1; see also Ember v. Ember, 720 N.E.2d 436, 438 (Ind.Ct.App. 1999). Here, where the parties agree upon the facts, the trial court's order is analyzed strictly as a question of law. This Court reviews questions of law under a de novo standard and owes no deference to a trial court's legal conclusions. Spears v. Brennan, 745 N.E.2d 862, 869 (Ind.Ct. App.2001), reh'g denied.

#### Rule of Law

 When construing an ordinance, we apply the rules applicable to statutory construction. Deja Vu of Hammond, Inc. v. City of Lake Station, 681 N.E.2d 1168, 1171 (Ind.Ct.App.1997). When construing a statute this Court attempts to ascertain and give effect to the intent of the legislature as expressed in the statute. Indiana Dept. of Natural Resources v. Town of Syracuse, 686 N.E.2d 410, 412 (Ind.Ct. App.1997). In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. Id. However, an unambiguous statute must be held to mean what it plainly expresses, and a statute's plain and obvious meaning may not be expanded or restricted. North Miami Educ. Ass'n v. North Miami Community Schools, 746 N.E.2d 380, 382 (Ind. Ct.App.2001).

#### Analysis

 Section 292–1(a) of the Revised Code of Indianapolis and Marion County provides in pertinent part as follows:

---

1. See Marla Williams v. Francis Ingram, Individually and as an Indianapolis Police Officer, Cause No. IP–00–1815 C H/G. (App. 29.)

The consolidated city and the county shall indemnify and defend their respective officers, employees and agents ... if the action complained of was taken within the scope and arising out of the performance of official duties and responsibilities.

(App. 6.) In the instant case, it is undisputed that Officer Ingram "was a sworn member of the Indianapolis Police Department." (App. 8.) It is further alleged in Williams's federal complaint that Officer Ingram used his powers as a City police officer to solicit sex. As such, Officer Ingram argues that the agreed-upon facts and the allegations within the federal complaint give rise to the City's duty to defend him. We agree.

This Court has not previously considered the at-issue ordinance. As such, the parties direct this Court to outside case law addressing the *scope* of a police officer's employment, and the corresponding duties triggered by such a determination under similar provisions. In *San Diego Police Officers Ass'n v. City of San Diego*, 29 Cal.App.4th 1736, 35 Cal.Rptr.2d 253 (1994), the California District Court of Appeal denied a police officer's declaratory relief action against the City of San Diego, finding that the police officer was not acting in the scope of employment. There, the officer's declaratory relief action was based upon a section of the California Government Code, which reads in part as follows:

If after request a public entity fails or refuses to provide an employee or former employee with a defense against a civil action or proceeding brought against him and the employee retains his own counsel to defend the action or proceeding, he is entitled to recover from the public entity such reasonable attorney's fees, costs and expenses as are necessarily incurred by him in de-

fending the action or proceeding if the *action or proceeding arose out of an act or omission in the scope of his employment* of the public entity....

*Id.* at 256 (emphasis in original); CAL. GOV'T.CODE § 996.4. In addition to interpreting the language of this statute, the California District Court of Appeal considered prior case law in which it had held that an officer who detained a woman, had her perform a field sobriety test, and ordered her into his police car, was acting within the scope of his employment. *San Diego Police Officers Ass'n*, 35 Cal.Rptr.2d at 257–58 (citing *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 218–19, 285 Cal. Rptr. 99, 814 P.2d 1341 (1991)). The California District Court of Appeal found and held as follows:

[Police Officer] was not in the course of a series of authorized or official acts on the night in question, and we have no evidence of any misuse of official authority. [Police Officer] was on vacation, at home, having sex with [Victim] on October 13, 1994. The only connections between the facts and [Police Officer's] employment were that [Victim] was an informal informant and [Police Officer] was a vacationing police officer subject to being called on duty. These circumstances do not bring their sex acts within the scope of [Police Officer's] employment. We have no *evidence* [Police Officer] misused his official authority to coerce [Victim] into their sexual relationship.

*San Diego Police Officers Ass'n*, 35 Cal. Rptr.2d at 258 (emphasis added).

*San Diego Police Officers Ass'n* is helpful in that it references specific acts, which the California Court found to be within, and not within, the scope of a city police officer's employment. However, this Court is faced with the task of interpreting a duty-to-defend ordinance that speaks

prospectively to the defense of officers. This difference in the procedural context and the language of the ordinance affects *what* information should be considered by this Court in determining whether Officer Ingram's complained of actions were "taken within the scope and ar[ose] out of official duties and responsibilities." (App. 6.) More specifically, the question is whether it is appropriate to consider Williams's averments in her federal complaint in assessing Officer Ingram's *scope* of official duties.

██ To answer this question we look to the language of the ordinance. The at-issue duty-to-defend provision is written in anticipation of a future defense, and as such looks to the "action complained of" rather than evidence of the act—as the District Court of Appeal recognized in *San Diego Police Officers Ass'n.* From the plain language of "action complained of" it may be inferred that the city-county council would have intended any initial *scope* of performance decision to be properly based upon facts as alleged in a federal complaint. We may not expand or restrict upon the ordinance's plain and obvious meaning. Furthermore, under federal law all well-pleaded allegations in a complaint are accepted as true. *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 119 (7th Cir.1997).

Here, in the first incident described in Williams's complaint, she alleges that officer Ingram pulled her over, asked for her driver's license and registration, and administered a breath test. In the second incident, Williams states that Officer Ingram "forcefully grabbed" Williams from inside a cab, told the cab driver he would be arrested if he drove away with Williams, and then handcuffed Williams and placed her inside his police car. (App. 31–32.) The Restatement of Agency provides that "[t]o be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 453 (Ind.2000) (quoting RESTATEMENT (SECOND) OF AGENCY § 229 (1958)); *see also City of Anderson v. Weatherford,* 714 N.E.2d 181, 186 (Ind.Ct. App.1999) (quoting *Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993) (holding that "[i]n Indiana, an employee's tortuous act may fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business.")).

Accepting Williams's allegations in her federal complaint as true, we find several of the alleged actions of Officer Ingram to be on their face "within the scope and arising out of the performance" of a police officer's official duties. Accordingly, this Court rejects Corporation Council's decision that Officer Ingram's actions, as alleged in Williams's federal complaint, could not have been within the scope of the performance of his official duties. In doing so, this Court also rejects the argument that Officer Ingram does not have a private right of action to challenge Corporation Counsel's decision, again relying on the straightforward language of the provision; "The consolidated city and the county *shall* ... defend their respective officers ...," as well as the contractual relationship between Officer Ingram and the City. (App. 6.) (Emphasis added.)

██ Officer Ingram is correct to characterize his declaratory judgment complaint as founded in contract law, not tort law. *See City of Terre Haute v. Brown,* 483 N.E.2d 786, 787 (Ind.Ct.App.1985) (holding in part that firemen are employees of the city and that their "employment status is created by the combination of relevant statutes, ordinances, and safety board records which prescribe duties and

procedures such as appointment, compensation, demotion, and hearings; such *laws affecting employment become a part of the contract as if their terms were expressly referred to or incorporated therein.*" (Emphasis added.)) As such, Officer Ingram's declaratory judgment complaint, which strictly involves the duty-to-defend issue, does not fall under the Indiana Tort Claims Act, Indiana Code section 34–13–3–1, and he need not have filed a notice of tort claim as argued by the City.

■ Lastly, this Court rejects the City's argument that we should dismiss Officer Ingram's complaint for declaratory judgment "without prejudice, thus allowing [him] to refile when he is willing to cooperate in the discovery process by waiving his Fifth Amendment rights...." (Appellee's Brief at 12.) In *Gash v. Kohm,* 476 N.E.2d 910, 913 (Ind.Ct.App.1985), this Court stated the following rule of law pertaining to an assertion of Fifth Amendment rights in a civil proceeding:

> Although the refusal to testify in a civil case cannot be used against the one asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify.

In the instant case, we accept Williams's allegations contained in her federal complaint as true. Thus, for purposes of determining the City's prospective duty-to-defend, the dispositive issue remains a question of law, from which no inferences need be drawn. Accordingly, this Court need not dismiss Officer Ingram's action, and in the process convey to Officer Ingram the need to waive his Fifth Amend-

ment rights to advance the arguments of a presently adverse party.

Reversed.

KIRSCH, J., concurs.

BROOK, J., dissents with separate opinion.

BROOK, Judge, dissenting.

Officer Ingram appeals a negative declaratory judgment in which the trial court concluded that his employer, the City, had no duty to defend him in a federal lawsuit brought by Williams because the actions complained of were not within the scope of Officer Ingram's employment. The majority reverses the trial court's judgment, but because I disagree with both the standard of review and the ultimate result, I respectfully dissent.

"Pursuant to the Uniform Declaratory Judgment Act, declaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment or decree." [2] *Ember v. Ember,* 720 N.E.2d 436, 438–39 (Ind.Ct.App.1999) (citations omitted). "When, as here, a trial court enters a general judgment with no findings of fact, we presume the judgment is based on findings supported by the evidence. Our standard of review in such cases is limited, and we must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence." *Plesha v. Edmonds,* 717 N.E.2d 981, 986 (Ind. Ct.App.1999), *trans. denied* (2000) (citations omitted).

The sole issue in the instant case is whether the City has a duty to defend Officer Ingram in his federal civil lawsuit,

---

2. The majority cites *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F.3d 116, 119 (7th Cir.1997), for the proposition that "under federal law all well-pleaded allegations in a complaint are accepted as true." *Grzan,* however, involved the review of a dismissal of a complaint for failure to state a claim. *See id.*

a duty that exists only if the actions complained of in the lawsuit "w[ere] taken within the scope and arising out of the performance of official duties and responsibilities." INDIANAPOLIS, IND., REV. CODE OF THE CONSOL. CITY AND COUNTY, § 292-1.[3] The majority characterizes the question of whether Officer Ingram's actions are within the scope of employment as one of law to be reviewed *de novo* by this court because "the parties agree upon the facts," but well-settled law seems to indicate otherwise.

"If some of the employee's actions were authorized, *the question of whether the unauthorized acts were within the scope of employment is one for the [trier of fact]*." *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind.Ct.App.2000), *trans. denied* (2001) (emphasis added).[4] It cannot be denied that at least some of the actions alleged in Williams' federal complaint are outside the scope of Officer Ingram's employment, such as "inquir[ing] about lap dances and negotiat[ing] with [her] for a lap dance," and giving her a breathalyzer test and "falsely inform[ing] her that it registered at two times the legal limit." Therefore, the question is one of fact, and one on which Officer Ingram and the City most certainly did not agree.

Keeping in mind that "we presume the judgment is based on findings supported by the evidence" and that we "must affirm the trial court's judgment if it can be sustained on any legal theory supported by the evidence," *Plesha*, 717 N.E.2d at 986, we must review the record for evidence to support a finding that Officer Ingram was acting outside the scope of employment. If such evidence can be found, we must presume that the trial court made that finding. The allegations in Williams' complaint, which the trial court admitted into evidence at the declaratory judgment proceeding, are adequate to support a finding that Officer Ingram was acting outside the scope of his employment,[5] which leads una-

3. The majority interprets the ordinance in question as having purely prospective operation. I cannot agree. The only limit the ordinance places on the duty of the City to defend its employees is that the employee's complained-of actions be within the scope of his employment. I see no reason that this determination could not be made after the civil trial. In any event, because Officer Ingram sought a declaratory judgment against the City before the underlying civil suit went to trial, the retrospective or prospective nature of the ordinance is irrelevant in this case, and we need not reach the issue.

4. When "none of the employee's acts were authorized, the matter is a question of law." *Southport Little League*, 734 N.E.2d at 268. While one could conclude that none of Officer Ingram's alleged actions were authorized, the result of such a conclusion would be the same as the one I urge in this dissent: that as a matter of law, Officer Ingram's actions would not have been within the scope of his employment, and the City therefore would have no duty to defend him in a civil suit.

I would also note that the question of whether one was acting within the scope of employment usually arises in a *respondeat superior* context when the ultimate question is whether the employer will be liable for the tortious actions of the employee. As Williams did not name the City in her federal complaint, the issue is only whether the City is obligated to defend Officer Ingram. I see no reason to treat this question of fact differently in this context.

5. Officer Ingram exercised his right not to testify in the declaratory judgment proceeding, apparently because of pending criminal charges arising out of the same actions complained of by Williams. "Although the refusal to testify in a civil case cannot be used against the one asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness' refusal to testify." *Gash v. Kohm*, 476 N.E.2d 910, 913 (Ind.Ct. App.1985), *trans. denied*. Therefore, the trial court was permitted to draw an adverse infer-

voidably to the conclusion that the City has no duty to defend Officer Ingram in his federal lawsuit. I would therefore affirm the trial court's judgment.

ence from Officer Ingram's decision not to testify.