William E. HATCHER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 65A01–0104–CR–155.

Court of Appeals of Indiana.

Jan. 31, 2002.

Robert R. Faulkner, Philip Hayes, Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

William E. Hatcher appeals his conviction of dealing in a schedule II controlled substance.[1] He raises three issues, which we consolidate and restate as two:

1. Whether the State was required to prove Hatcher had manufactured methamphetamine for the use of another; and

2. Whether the trial court erred in overruling Hatcher's motion for a mistrial after a defense witness testified about the contents of a note that had not been produced in response to a discovery motion.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In November of 2000, Hatcher asked his former brother-in-law, Jason Hertel, if he could stay in Jason's basement for a short time. Jason agreed and gave Hatcher a key to a door that led to the basement. On November 13, 2000, Jason's father Clarence received a telephone call from one of Jason's neighbors, who told him something was going on at his son's house. When Clarence arrived at the house and opened the basement door, he smelled anhydrous ammonia and ether. An unidentified man and woman came up the basement stairs and left the house. Hatcher, carrying a small cooler, a sack and a shotgun, also came up the basement stairs and left. Clarence called the police.

When the police arrived, they found evidence of an operating methamphetamine lab. They also found methamphetamine. They estimated that at least eighteen

---

1. Ind.Code § 35–48–4–2(a)(1).

batches of methamphetamine had been prepared in the basement.

## DISCUSSION AND DECISION

1. *Manufacture of a Schedule II Controlled Substance*

■ Hatcher contends that he cannot be convicted of dealing methamphetamine, as the State failed to prove he had manufactured it for the use of another. Indiana Code § 35–48–4–2(a)(1) provides that a person is guilty of dealing in a schedule II controlled substance if he knowingly or intentionally manufactures methamphetamine. Hatcher contends that "manufacture" as defined in Ind.Code § 35–48–1–18 requires the State prove the methamphetamine was not manufactured for his own use.[2] This code section defined "manufacture" as:

(1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substance's of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. *It does not include the preparation or compounding of a controlled substance by an individual for his own use* or the preparation, compounding, packaging, or labeling of a controlled substance:

(A) by a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

(B) by a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale[.]

(Emphasis supplied.)

■ This is a case of first impression. Whether the legislature intended to create an exception for individuals who manufacture methamphetamine for their own use is a matter of statutory interpretation, which is the province of the judiciary. *Ad Craft, Inc. v. Board of Zoning Appeals of Evansville and Vanderburgh County,* 693 N.E.2d 110, 113 (Ind.Ct.App.1998); *Indiana Dep't of Natural Resources v. Town of Syracuse,* 686 N.E.2d 410, 411 (Ind.Ct.App.1997).

■ The primary goal of statutory interpretation is to give effect to the intention of the legislature. *Town of Syracuse,* 686 N.E.2d at 412. This is accomplished by examining the statutory language. *Meier v. American Maize–Products Co., Inc.,* 645 N.E.2d 662, 667 (Ind.Ct.App. 1995). Words from a particular section of the statute may not be construed in isolation but must be viewed in the context of the entire act. *Town of Syracuse,* 686 N.E.2d at 412. "We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* Further, "we do not presume that the legislature intended language used in the statute to be applied illogically or to bring about an unjust or absurd result[.]" *Riley v. State,* 711 N.E.2d 489, 495 (Ind.1999). We must also strictly construe penal statutes against the state to avoid enlarging them beyond the fair meaning of the lan-

---

2. The statute was amended in 2001 to delete the language on which Hatcher relies. Hatcher also argues that the court improperly refused to instruct the jury with respect to the definition of manufacture. Because we find the statutory definition could not have been intended to permit the manufacture of methamphetamine for personal use, we need not address that argument.

guage used. *See State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 4 (Ind.2001).

Methamphetamine is a Schedule II controlled substance. In 1999, the legislature enacted Ind.Code § 35–48–4–14.5, possession of chemical reagents or precursors with intent to manufacture, which allows an individual to be found guilty of a Class D felony if he or she is found in possession of two or more of the reagents that go into the manufacture of methamphetamine. The legislature could not have intended to enact a statute allowing one to be subjected to criminal liability for possession of the ingredients of methamphetamine, but to be excluded from liability if the ingredients were used to manufacture the finished product.

■ We further note that the legislature amended the statutory definition of "manufacture" effective July 1, 2001, to delete the exclusion for "the preparation or compounding of a controlled substance by an individual for his own use." It is a "fundamental rule of statutory construction" that such an amendment raises the presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly. *United Nat. Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind.1999). We believe this amendment undoubtedly was passed in order to more clearly express the original intent of the legislature.

The exclusion in Ind.Code § 35–48–1–18 as originally promulgated might have been meant to apply to those unfortunate individuals who, because of their health, are forced to put together their own medication. It could not have been intended to apply to those people who decide to manufacture methamphetamine—a drug the manufacturing process of which is inherently dangerous—in their base-

ments. "[O]ne cannot commit the felony of manufacturing methamphetamine without possessing at least some hazardous substances; without using, pouring and mixing those substances; or without applying heat. Thus, manufacturing methamphetamine by its very nature, cannot be committed without creating a substantial risk that someone will be killed." *People v. James,* 62 Cal.App. 4th 244, 270–71, 74 Cal.Rptr.2d 7 (1998), *citation and quotation marks omitted.* To find otherwise would lead to an absurd result.

There was sufficient evidence that Hatcher was guilty of dealing in a schedule II controlled substance even if the evidence did not support a finding Hatcher manufactured the methamphetamine for a purpose other than his own use.

2. *Motion for Mistrial*

■ Hatcher called his ex-wife, Charlotte, to testify. During her cross-examination, the State asked Charlotte about a note Hatcher had left for her. Apparently, a police officer executing a search warrant at Charlotte's house saw a note that said, in effect, that Hatcher loved her and the children and was sorry. The officer who saw the note did not take it, and it was not entered into evidence. Its existence was not disclosed to Hatcher during discovery.

Hatcher objected to testimony about the note, arguing that the jury would not "construe that note in any other fashion than a confession." (Tr. at 222.) He requested a mistrial, arguing that the State had violated discovery. The trial court denied the mistrial motion and gave the following admonition to the jury:

Members of the jury, you are instructed that there is no evidence in this case as to when the note referred to by Mrs. Hatcher was written, nor as to why it

was written. You must not consider any testimony or reference to this note for any purpose and you must not assess any prejudice against Mr. Hatcher based on this note.

(Tr. at 227–28.) Hatcher argues that this was insufficient, and the mistrial should have been granted.

 Whether to grant a mistrial is within the trial court's discretion. *Norcutt v. State,* 633 N.E.2d 270, 272 (Ind.Ct.App. 1994). To succeed on appeal from the denial of a mistrial, a defendant must demonstrate that the conduct in question was so prejudicial that the defendant was placed in a "position of grave peril to which he should not have been subjected." *Id.* at 272–73. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision. *Id.* at 273. A mistrial is an extreme remedy that should not be routinely granted. *Id.*

 Even if there was a discovery violation,[3] an admonition is presumed to cure any error resulting from the admission of evidence, and juries are presumed to follow instructions to disregard such evidence. *Stephenson v. State,* 742 N.E.2d 463, 483 (Ind.2001). Because of the substantial evidence against Hatcher, which evidence included his fingerprints on the items used in the manufacture of methamphetamine from the basement and testimony connecting Hatcher with the manufacturing utensils, the prejudicial effect of the testimony about the contents of the note was minimal.

Affirmed.

BARNES, J., concurs.

SULLIVAN, J., concurring in result with opinion.

SULLIVAN, Judge, concurring in result.

The majority premises its holding upon a conclusion that the legislature "could not have intended" to exempt manufacture of methamphetamine for personal use. Slip op. at 5. Yet that is precisely what our General Assembly did in 1988 when it enacted the statute in question. The statute remained in that form for thirteen years until July 1, 2001, when the "offending" portion of the statute was deleted. The majority avoids the clear language of the statute by opining that the 2001 deletion was merely an expression of the intent of the legislature in drafting the statute in the first place.

We cannot avoid the legislature's obviously conscious choice of words in drafting the statute. As the State in its brief notes, (Appellee's Brief at 5) the term "manufacturing" is specifically and clearly defined as including "[t]he production, preparation, propagation, compounding, conversion, or processing...." Ind.Code § 35–48–1–18 (Burns Code Ed. Repl.1998). Thus to engage in "preparation or compounding" the controlled substance is to "manufacture" it. *Id.* Such activity is protected if done "for [the actor's] own use." *Id.*

Neither are we able to justify this conviction upon the rationale that Hatcher falls outside the protection of the "personal use" provision because he was involved in "production," "conversion," or "processing" as opposed to "preparation or compounding." *Id.* Although such argument might be superficially appealing, as noted by the

---

3. Because we find the judge's admonition to the jury was adequate, we do not address whether a discovery violation can arise from the State's failure to disclose an item that is not offered into evidence and that is introduced through the testimony of a defendant's own witness.

State in its brief, the definition of "manufacture" which is the prohibited act, includes all of the above terms. We cannot therefore legitimately parse the definitional portion of the statute, picking and choosing to honor the use of certain words and to disregard others in order to fit the statute to our own sense of sound public policy.

The General Assembly is not constitutionally, or otherwise, prohibited from enacting extremely poor public policy into law. The legislature, in its eminent wisdom, is at liberty to do so, so long as neither the United States Constitution nor the Indiana Constitution is violated.

More than half a century ago in *United States v. Butler*, 297 U.S. 1, 78–79, 56 S.Ct. 312, 80 L.Ed. 477 (1936), Mr. Justice Stone, not insignificantly joined by Justices Brandeis and Cardozo, eloquently articulated the principle as follows:

"The power of courts to declare a statute unconstitutional is subject to two guiding principles of decision which ought never to be absent from judicial consciousness. One is that courts are concerned only with the power to enact statutes, not with their wisdom. The other is that while unconstitutional exercise of power by the executive and legislative branches of the government is subject to judicial restraint, the only check upon our own exercise of power is our own sense of self-restraint. For the removal of unwise laws from the statute books appeal lies, not to the courts, but to the ballot and to the processes of democratic government."

Many times both previously and subsequently, the United States Supreme Court by majority decision has expressed the underlying premise.[4] In *Tennessee Valley Authority v. Hill* 437 U.S. 153, 194–195, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), it was stated thusly:

"Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end. We do not sit as a committee of review, nor are we vested with the power of veto."

*See also Vance v. Bradley* 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

Having found fault with the majority's analysis, I nevertheless concur in the affirmance of the conviction. It seems clear to me that Hatcher's involvement with the methamphetamine was not done for personal use. During the period beginning sometime in November when Hatcher obtained the key to the basement and November 13, when the violation was discovered by police, some eighteen batches of methamphetamine had been prepared. The amount alone warrants the reasonable conclusion that the product was being manufactured for distribution, not merely for Hatcher's own use. *Chandler v. State*, 581 N.E.2d 1233 (Ind.1991); *Montego v. State*, 517 N.E.2d 74 (Ind.1987).

Because I base my vote for affirmance upon the amount of the controlled substance involved, I feel it appropriate to address Hatcher's argument that the trial court erred in not giving his tendered specific instruction concerning the "personal use" provision of the statute which would have advised the jury that it was the State's burden to prove beyond a reasonable doubt that the methamphetamine was

---

4. For the myriad cases on point see Constitutional Law, West's UNITED STATES SUPREME COURT DIGEST § 70.3(4), at 276–78 (2001).

not for his own use. The instruction was, in my view, a correct statement of the law. The court, therefore, could have appropriately ruled that Hatcher was entitled to an instruction upon his theory of defense. However, I conclude that the substance of Hatcher's theory was adequately covered by the instruction which was given and which enunciated the "personal use" proviso within the definition of the term "manufacture."

Finally, I feel obliged to address the issue of defendant's mistrial motion and the majority's resolution of that issue. I agree that the admonition to the jury cured any error with regard to an arguable discovery violation. However, I do not subscribe to the possible implication of Footnote 3 of the majority opinion to the extent that it suggests that no violation takes place if the matter, i.e. the content of the note, "is introduced through the testimony of a defendant's own witness." Op. at 174. Such implication would seem to be justified upon a theory akin to invited error. Yet the scenario in our case is not so easily dismissed. Hatcher's ex-wife, the witness in question, was indeed called as a witness for the defense. However, the injection of the contents of the note was brought about upon the State's cross examination of the witness. In this sense, rather than a case of invited error, it is more like a prejudicial evidentiary harpoon thrown by the prosecution. Were it not for the admonition given to the jury to ignore the testimony, my vote to affirm might have been different.

Subject to the above comments, I concur.