**Todd POE, Appellant Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 28A01–0202–CR–77.

Court of Appeals of Indiana.

Sept. 17, 2002.

682

Robert C. Price, Price & Runnells, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Todd Poe ("Poe") appeals his conviction in the Greene Circuit Court for Dealing in a Schedule II Controlled Substance,[1] a

Class B felony, and Possession of Precursors for an Illegal Drug Lab,[2] as a Class D felony. Poe raises the following two issues on appeal:

I. Whether the trial court abused its discretion when it refused Poe's tendered jury instruction on the definition of manufacturing; and,

II. Whether the trial court abused its discretion when it instructed the jury that it did not have to find that Poe committed the accused offenses on the specific date listed in the Information.

We reverse and remand for a new trial.

### Facts and Procedural History

The facts most favorable to the trial court's decision reveal that on June 23, 2000, Aaron Michael Gater ("Gater") made an emergency call to 911, to which the Greene County Sheriff Department responded. Gater reported that two men had chased him through the woods near his residence in Solsberry, Indiana, and that he heard one of the men tell the other man to shoot him. Upon arrival at the scene, Greene County Sheriff Officers Terry Pierce ("Officer Pierce") and Brian Allen ("Officer Allen") went with Gater to the woods where the alleged incident occurred. While looking in the woods for the two men, the officers came upon a tree stump covered with several glass jars, a bottle of Liquid Fire, which contains sulfuric acid, and a container of salt. They also found a black backpack and a large, green duffel bag beside it on the ground.

Based on his experience, Officer Pierce believed the items to be part of a methamphetamine lab. After informing Officer Allen of his suspicions, Officer Pierce noticed a three-wheeler vehicle near the

---

1. Ind.Code § 35–48–4–2(a) (1998).

2. Ind.Code § 35–48–4–14.5(b) (1998) (current version at Ind.Code § 35–48–4–14.5(c) (1998 & Supp.2001)).

area, approximately fifty feet away, and Poe lying on the ground next to it. Based upon their concerns that another person might also be hiding in the woods, the officers handcuffed Poe and read him his Miranda rights. After it was determined that the officers had come across a working methamphetamine lab, analyses on the substances found in the jars tested positive for methamphetamines, and two of Poe's fingerprints were found on one of the glass jars, Poe was charged with Dealing in a Schedule II Controlled Substance, as a Class B felony, and Possession of Precursors for an Illegal Drug Lab, as a Class D felony. The charging information alleged that all of the events upon which the charges were based occurred "on or about June 23, 2000." Appellant's App. p. 15.

Poe's two-day trial began on August 15, 2001. During trial, Poe called Gater as a witness. Gater testified that Poe came to his house on June 21, 2000, in order to cook methamphetamines. Tr. p. 321. The remainder of his testimony recounted events from June 21st through June 23rd, up until Gater asked a neighbor to call the police on the morning of June 23rd, claiming that two men were trying to shoot him in the woods. Tr. p. 324. From the time of the 911 call through trial, Gater's story of the three days of events changed at least five times, as he admitted during his direct examination at trial. Tr. p. 337.

After closing arguments on August 16, 2001, but before jury deliberations, the court read the jury instructions. One of the instructions given by the court, over Poe's objection, was a partial definition of "manufacture," taken from Indiana Code section 35–48–1–18, in effect at the time of the offense. It read:

The term "manufacture" means (1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Appellant's App. p. 60. Poe's counsel requested that the entire statute be included in the instruction. Appellant's App. p. 395. Excluded from the instruction was the remainder of the statute, which reads:

It does not include the preparation or compounding of a controlled substance by an individual for his own use or the preparation, compounding, packaging, or labeling of a controlled substance: (A) By a practitioner as an incident to his administering or dispending of a controlled substance in the course of his professional practice; or (B) By a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale; or (2) The organizing or supervising of an activity described in subdivision (1).

Ind.Code § 35–48–1–18 (1998).[3]

During deliberations, the jury sent two questions to the court. Tr. p. 442. The first question, which is applicable to this appeal, read: "Concerning all counts— please define 'on or about June 23' does that mean that day, that few days, etc." Appellant's App. p. 23. Over Poe's objection, Tr. p. 443, the court responded to the jury's first question by tendering the fol-

---

**3.** Revised Indiana Code section 35–48–1–18 became effective July 1, 2001, and is only applicable to offenses committed after June 30, 2001. With the revision, the following language was removed from the statute as quoted above: "the preparation or compounding of a controlled substance by an individual for his own use[.]"

lowing instruction to the jury: "The information states that the crime charged was committed on or about *June 23, 2000*. If you find that the crime charged was committed, the State is not required to prove that it was committed on that particular date." Appellant's App. p. 24 (emphasis in original). The jury returned its guilty verdict on August 16, 2001, and after a sentencing hearing on November 13, 2001, the trial court sentenced Poe to the Department of Correction for eleven years on Count I, Dealing in a Schedule II Controlled Substance, a Class B felony, and one and one-half years on Count II, Possession of Precursors for an Illegal Drug Lab, a Class D felony. Poe was given 240 days credit for time served, and Count II was ordered to run concurrent with Count I. Poe now appeals. Additional facts will be provided as necessary.

## I. "Manufacturing" Jury Instruction

■ Poe first argues that the trial court wrongfully refused to tender his instruction on the definition of "manufacturing." Our review of the trial court's decision to give or refuse a tendered jury instruction is for an abuse of discretion. In reviewing the decision, Indiana appellate courts look to the following three factors: "(1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Guyton v. State*, 771 N.E.2d 1141, 1144 (Ind.2002) (citing *Cutter v. State*, 725 N.E.2d 401, 408 (Ind.2000)).

The scenario under which this issue typically arises is when a trial court has refused to instruct a jury on a defense. *See Patton v. State*, 760 N.E.2d 672 (Ind.Ct. App.2002); *Toops v. State*, 643 N.E.2d 387 (Ind.Ct.App.1994). However, that is not the issue presented in this appeal. Here,

we follow a new line of Indiana Court of Appeals' decisions concerning whether the jury was properly instructed on the elements of Dealing in a Schedule II Controlled Substance, and whether the State met its burden of proving those elements, rather than whether the trial court wrongfully refused to instruct the jury about a defense.

At the time of the offense in this case, Dealing in a Schedule II Controlled Substance was defined as:

> (a) A person who:
> (1) knowingly or intentionally:
> (A) manufactures;
> (B) finances the manufacture of;
> (C) delivers; or
> (D) finances the delivery of;
> a controlled substance, pure or adulterated, classified in schedule I, II, or III, except marijuana, hash oil, or hashish; or
> (2) possesses, with intent to:
> (A) manufacture;
> (B) finance the manufacture of;
> (C) deliver; or
> (D) finance the delivery of;
> a controlled substance, pure or adulterated, classified in schedule I, II, or III, except marijuana, hash oil, or hashish; commits dealing in a schedule I, II, or III controlled substance, a Class B felony, except as provided in subsection (b).

Ind.Code § 35–48–4–2(a) (1998). At that same time, Indiana Code section 35–48–1–18 defined manufacturing as:

> (1) The production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any

packaging or repackaging of the substance or labeling or relabeling of its container. *It does not include the preparation or compounding of a controlled substance by an individual for his own use* or the preparation, compounding, packaging, or labeling of a controlled substance:

    (A) By a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

    (B) By a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale; or

    (2) The organizing or supervising of an activity described in subdivision (1).

Ind.Code § 35–48–1–18 (1998) (emphasis added). The definition of manufacturing was revised, effective July 1, 2001, for all offenses committed after June 30, 2001, to delete the personal use exemption in subsection (1), as emphasized above.

In *Bradley v. State,* 765 N.E.2d 204 (Ind.Ct.App.2002), a panel of this court, following the reasoning in Judge Sullivan's concurring opinion in *Hatcher v. State,* 762 N.E.2d 170, 175–76 (Ind.Ct.App.2002), *trans. denied,*[4] concluded that the "clear language" of Indiana Code section 35–48–4–2(a) controls and therefore, "the statute must be given a reasonable construction so as to give effect to the intent of the legislature, rather than straining the interpretation to the point of defeating legislative intent." *Bradley,* 765 N.E.2d at 210–11. The *Bradley* court concluded that under Indiana Code section 35–48–4–2(a), a defendant, whose alleged offense was committed prior to June 30, 2001, may only be convicted of dealing in a schedule I, II or III controlled substance if the State can prove that the defendant's intent to manufacture controlled substances was not for his personal use. *Id.* at 211. The *Bradley* court's conclusion clarifies that the personal use exemption is not a defense, but rather, an element of manufacturing, which in turn is an element of dealing in a controlled substance crime, concerning both of which the State has the burden of proof.

The manufacturing instruction Poe tendered included the entire text of the definition of manufacturing that was in effect at the time of his alleged offense, found at Indiana Code section 35–48–1–18. However, the court gave the following instruction:

    The term "manufacture" means (1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Appellant's App. p. 60. As discussed above, the instruction given to the jury should have included the personal use exemption, an element for which the State had the burden of proof. Therefore, we conclude that the trial court abused its discretion when it refused to give the jury Poe's instruction on manufacturing that included the personal use exemption. The next stage of our inquiry requires us to decide to whether the State met its burden nonetheless.

---

**4.** Justice Stone in *United States v. Butler,* 297 U.S. 1, 78–79, 56 S.Ct. 312, 80 L.Ed. 477 (1936), as quoted by Judge Sullivan in his concurring opinion in *Hatcher,* 762 N.E.2d at 175, explained: "For the removal of unwise laws from the statute books appeal lies, not to the courts, but to the ballot and to the processes of democratic government."

In *Bradley*, the court concluded that even though the instruction was not an accurate statement of the law, the State nonetheless "carried its burden and proved that Bradley's involvement was not solely for his personal use." *Bradley*, 765 N.E.2d at 211. Our case is distinguishable from *Bradley* on this issue. In our case, Gater made at least five different sworn statements recounting different versions each time. Tr. p. 337. His stories ranged from telling the police that he was scouting for deer in the woods when someone tried to shoot him, Tr. p. 323, to his last version told at trial that he went into the woods with Poe to cook methamphetamine, but that Poe and another unknown person were trying to shoot him so he ran and had neighbors call the police. Tr. pp. 339–40. None of Gater's versions are exactly the same as Poe's version. The only two versions that seem to be similar are those of Poe and Jeffery Brashier, who was also at Gater's residence for the entire three days during which events occurred. Tr. pp. 292–316. Under the conflicting facts and circumstances of this case, we cannot say, as in *Bradley* that the State carried its burden of proving that Poe's involvement was not solely for his personal use.

## II. Factual Variance Between Instruction and Charging Information

Poe's next argument is that the trial court abused its discretion when it instructed the jury that it did not have to find that Poe committed the accused offenses on the specific date listed in the charging information. "A variance is an essential difference between proof and pleading." *Allen v. State*, 720 N.E.2d 707, 713 (Ind.1999) (citation omitted).

In order for a variance to be fatal, it "must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense." *Johnson v. State*, 734 N.E.2d 530, 531 (Ind.2000) (quoting *Quillen v. State*, 271 Ind. 251, 253, 391 N.E.2d 817, 819 (1979)). Additionally, when time is not an element of the crime charged, or "of the essence of the offense," the State is only required to prove that the offense occurred any time within the statutory period of limitations; the State is not required to prove the offense occurred on the precise date alleged. *Sangsland v. State*, 715 N.E.2d 875, 878 (Ind.Ct.App.1999) (quoting *Quillen*, 271 Ind. at 252, 391 N.E.2d at 818–19).

In our case, the charging information alleged that Poe dealt a schedule II controlled substance and possessed precursors for an illegal drug lab "on or about June 23, 2000." Appellant's App. pp. 11, 14. Time is not an element of either crime charged. *See* Ind.Code § 35–48–4–2(a) (1998); Ind.Code § 35–48–4–14.5(b) (1998) (current version at Ind.Code § 35–48–4–14.5(c) (1998 & Supp.2001)). Nevertheless, during deliberations, one of the two questions the jury sent to the court read: "Concerning all counts—please define 'on or about June 23' does that mean that day, that few days, etc." Appellant's App. p. 23; Tr. p. 442. Over Poe's objection, Tr. p. 443, the court responded by submitting the following instruction to the jury: "The information states that the crime charged was committed on or about *June 23, 2000.* If you find that the crime charged was committed, the State is not required to prove that it was committed on that particular date." Appellant's App. p. 24 (emphasis in original).

Under Indiana law, the phrase "on or about June 23, 2000" clearly does not limit the State to only the events of June 23, 2000, especially in light of the fact that time is not an element of either of the

crimes charged. Nevertheless, all of the State's witnesses testified with regard to events that only occurred June 23, 2000, the date alleged in the charging information. It was not until Poe called his first witness that any evidence was presented with regard to events that occurred prior to June 23, 2000, beginning with the testimony of Brashier. Tr. p. 292. Poe cannot now complain that he was prejudiced or misled by a variance that he created when he himself was the first party to present evidence on the events that occurred from June 21, 2000 to June 23, 2000. Therefore, we conclude that the trial court did not abuse its discretion when it instructed the jury that it did not have to find that Poe committed the accused offenses on the specific date listed in the charging information.

### Conclusion

Based on *Bradley,* we conclude that the trial court abused its discretion when it refused Poe's tendered jury instruction that contained the accurate definition of manufacturing according to the statute in effect at the time of the alleged offenses. Nevertheless, we also conclude that Poe was not misled or prejudiced by the minor variance as to the date of his conduct that he created. Therefore, we reverse the trial court's decision and remand for a new trial.

Reversed and remanded.

KIRSCH, J., concurs.

BARNES, J., concurs in result with opinion.

BARNES, Judge, concurring in result.

I concur, but write separately to explain my concurring vote in *Hatcher,* 762 N.E.2d 170 (Ind.Ct.App.2002), *trans. denied.* Although not mentioned in the opinion, the trial court's tendered jury instruction in *Hatcher* included the language of Indiana

Code Section 35–48–1–18 that refers to the personal use exemption. The instruction at issue here does not mention the personal use exemption language contained in the statute. Because the trial court specifically omitted the statutory personal use exemption language, I concur with the majority's conclusion that the trial court's tendered jury instruction was improper.