**Thomas R. CULBERTSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 63A01–0209–CR–347.**

Court of Appeals of Indiana.

July 31, 2003.

Rehearing Denied Sept. 15, 2003.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a jury trial, Thomas R. Culbertson was convicted of two counts of dealing methamphetamine,[1] Class B felonies, and maintaining a common nuisance,[2] a Class D felony. He now appeals, arguing that the evidence was insufficient to support each of his convictions.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

In February 2001, Tracy Kinley offered to work as a confidential informant for the Pike County Sheriff's Department. They agreed that he would try to make a controlled drug purchase from Culbertson by trading Culbertson anhydrous ammonia, which is used to make methamphetamine, for methamphetamine.

Officers searched Kinley and his vehicle and equipped him with a recording device. Kinley went to the trailer where Culbertson and his wife lived and offered to make the trade. Culbertson agreed to the deal, but was unable to locate any methamphetamine among his belongings. He asked Heather Wilson, a friend who was also present, to give Kinley some of hers, which she did. Culbertson told Kinley to come back later, and he would have some more. Afterwards, when Kinley met with the officers, he produced a baggie containing a white powder and a tape recording of his conversation with Culbertson.

Based on this evidence, officers obtained and executed a search warrant on Culbertson's property, which was used as a junkyard. During their search, police recovered seven cans of starting fluid with no spray nozzles, six lithium batteries, nine packages of twenty-four tablets each of pseudoephedrine nasal decongestant, a plastic bottle, and plastic tubing from a vehicle parked on the property. Near the trailer, they found a length of hose with a metal fitting and numerous battery parts and a burnt can of starting fluid. Near a cave on the property, they found an empty can of starting fluid, coffee filters, plastic tubing, and punched and burned metal cans. Elsewhere they found hypodermic needles. In the trailer, they found an electronic scale, muriatic acid, metal spoons with residue, a razor blade, a pair of wire cutting pliers, and respirators. In a school bus parked on the property, they found hypodermic needles, metal spoons, a glass baking dish with residue, a portable

---

1. *See* IC 35–48–4–2.

2. *See* IC 35–48–4–13.

scale, a light bulb containing residue, table salt, and a plastic bag containing white powder.

Culbertson was charged with dealing in a schedule II controlled substance by manufacturing methamphetamine, dealing in a schedule II controlled substance by possessing with the intent to deliver methamphetamine, and possession of precursors. Later, the State added charges of dealing in a schedule II controlled substance by delivering methamphetamine, maintaining a common nuisance, and dealing in a schedule II controlled substance by delivering methamphetamine to Wilson. The jury returned guilty verdicts as to the first five charges and the trial court entered convictions on those verdicts. The trial court sentenced Culbertson to twenty years' imprisonment on Count I, twenty years' imprisonment on Count IV, and three years' imprisonment on Count V and ordered all of the sentences to be served concurrently. The trial court did not enter a sentence on Counts II or III.

## DISCUSSION AND DECISION

 Culbertson challenges the sufficiency of the evidence supporting each of his convictions. In reviewing an appellate claim that the evidence was insufficient, we will not reweigh the evidence or judge the credibility of witnesses. *Bradley v. State,* 765 N.E.2d 204, 211 (Ind.Ct.App.2002). We examine the evidence most favorable to the judgment and all reasonable inferences that may be drawn therefrom. *Id.* We will sustain a conviction only when each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Id.*

### I. Dealing in Methamphetamine: Manufacturing

 Culbertson was charged in February 2001 with violating IC 35–48–4–2, dealing in a schedule II controlled substance,

by manufacturing methamphetamine. That statute provides that a person who knowingly or intentionally manufactures or possesses with intent to manufacture a controlled substance classified in schedule II commits dealing in a schedule II controlled substance, a Class B felony. At the time Culbertson was charged, IC 35–48–1–18 provided that "manufacturing" was the production or processing of a controlled substance, either directly or indirectly. The statute contained a number of exceptions, including one for the preparation or compounding of a controlled substance by an individual for his or her personal use.[3]

We discussed this exception in *Bradley,* 765 N.E.2d at 210–11. In that case, we rejected the reasoning of *Hatcher v. State,* 762 N.E.2d 170 (Ind.Ct.App.2002), *trans. denied,* in which a panel of this court refused to recognize the exception because it concluded that such a result could not have been the intent of the legislature. Instead, we applied the clear language of the statute and concluded that to obtain a conviction for dealing by manufacturing, the State must prove that the intent to manufacture was not for a defendant's personal use. *Bradley,* 765 N.E.2d at 210–11.

Ultimately, in *Bradley,* we found that the State had carried its burden and proved that the defendant's production was not solely for his personal use. The quantity of methamphetamine manufacturing ingredients found in the defendant's car far exceeded a quantity associated with manufacturing for personal use: sixty-four blister packs of pseudoephedrine pills, each containing twenty-four pills, a pill bottle containing over one thousand pills, forty-nine lithium batteries, and other necessary equipment for manufacturing. We concluded that the evidence permitted the reasonable inference that the defendant did not intend to manufacture methamphetamine solely for his own use. *Id.*

Here, it may be reasonably inferred from the evidence that Culbertson was manufacturing methamphetamine. Ser-

---

**3.** The legislature amended the statute to eliminate this exception effective July 1, 2001. P.L. 17–2001, Sec. 18.

geant James Dotson, Jr. of the Indiana State Police testified about the lithium ammonia process used to manufacture methamphetamine, which he explained uses tubing, bottles, coffee filters, over-the-counter cold medicine, starting fluid or alcohol, anhydrous ammonia, lithium batteries, and hydrogen chloride gas made from sulfuric acid and table salt. Dotson testified that Culbertson's property contained all of these items except anhydrous ammonia and also included a pit for burning items used in the manufacture of methamphetamine, which is also a common feature of drug manufacturing sites.

However, as in *Bradley,* the State was required to prove that Culbertson's manufacturing was not done for his personal use. In contrast to *Bradley,* here, Dotson testified that officers recovered only nine packages of cold medicine and six lithium batteries, which could have produced nine grams of methamphetamine. We are not persuaded that this amount indicates that Culbertson was manufacturing methamphetamine for the use of others. Accordingly, the State failed to produce sufficient evidence on this element of the offense and Culbertson's conviction for dealing in methamphetamine based on manufacturing must be reversed.

## II. Dealing in Methamphetamine: Delivery

■ Culbertson was also charged with delivering methamphetamine. IC 35–48–4–2, dealing in a schedule II controlled substance, provides that a person who knowingly or intentionally delivers or finances the delivery of, or who possesses with the intent to deliver, a controlled substance classified in schedule II commits dealing in a schedule II controlled substance, a Class B felony. IC 35–48–1–11 defines "delivery" as "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)."

In *Laird v. State,* 483 N.E.2d 68, 69–70 (Ind.1985), a defendant convicted of dealing in a controlled substance argued that the evidence was insufficient to support the element of delivery. In that case, the defendant picked up his girlfriend and told her they were going to Lafayette. As they drove in the defendant's car, his girlfriend noticed her beach bag in the backseat. When she opened the bag she saw pills, some in their marked containers and others loose in the bag. The defendant drove to the home of an acquaintance, took the bag from the car, and gave it to his girlfriend. He told her to carry the bag into the home and give it to the man, which she did. The man took the bag into a bedroom where he, the defendant, and the girlfriend sorted the drugs and repackaged some for future sales.

The defendant contended on appeal that his girlfriend, not he, delivered the drugs. After examining the statutory definition of "delivery," the supreme court agreed that "this is the situation contemplated by the concept of constructive transfer." *Id.* at 70. It noted that the drugs were transferred for the defendant and at his request and therefore affirmed his conviction. *Id.*

Tracy Kinley testified that he and officers of the Pike County Sheriff's Department agreed that he should purchase methamphetamine from Culbertson. He drove to Culbertson's property. When he entered the trailer, the Culbertsons and Wilson were present. He asked Culbertson for methamphetamine and offered to trade him some for anhydrous ammonia. Culbertson agreed to the trade and looked for his methamphetamine but was unable to find it. He then told Wilson to give Kinley some of hers and that Kinley should come back later and he would have more. As in *Laird,* Culbertson did not physically make the transfer. However, the transfer was made at his direction. This constitutes delivery. Certainly, Culbertson organized and supervised the transfer of methamphetamine from Wilson to Kinley. The evidence is sufficient to support his conviction.

### III. Maintaining a common nuisance

 Culbertson also challenges his conviction for maintaining a common nuisance. At the time he was charged, IC 35–48–4–13(b) defined the offense of maintaining a common nuisance as knowingly or intentionally maintaining a building, structure, vehicle, or other place that is used by persons to unlawfully use controlled substances or for unlawfully keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances, or items of drug paraphernalia. Effective July 1, 2001, the legislature amended this section to include maintaining a place for "manufacturing" an illegal substance as a means of committing the offense. *See* P.L. 17–2001, Sec. 27. However, at the time Culbertson was charged, the statute did not include "manufacturing." Nonetheless, the information, filed March 2002, charged that Culbertson violated IC 35–48–4–13 in February 2001 by maintaining a mobile home and vehicle "that was used by persons to unlawfully use, manufacture, keep and/or sell a Controlled Substance[.]" *Appellant's Appendix* at 91. Moreover, in its preliminary and final instructions, the trial court instructed the jury that maintaining a common nuisance was defined by statute as knowingly or intentionally maintaining a building or vehicle that is used for "unlawfully manufacturing, keeping, offering for sale, selling, delivering, or financing the delivery of controlled substances...." *Appellant's Appendix* at 200, 240.

 The United States Constitution provides that "[n]o state shall ... pass any ... ex post facto Law." *Spencer v. O'Connor,* 707 N.E.2d 1039, 1042 (Ind.Ct.App. 1999), *trans. denied* (quoting U.S. CONST. art. I, § 10). The Indiana Constitution similarly provides that "[n]o ex post facto law ... shall ever be passed." *Marley v. State,* 747 N.E.2d 1123, 1130 (Ind.2001) (IND. CONST. art. I, § 24); *Teer v. State,* 738 N.E.2d 283, 287 (Ind.Ct.App.2000),

*trans. denied* (2001); *Spencer,* 707 N.E.2d at 1042. Ex post facto analysis under Indiana law is the same as under the federal Constitution. *Teer,* 738 N.E.2d at 287; *Spencer,* 707 N.E.2d at 1042.

 The Ex Post Facto Clause prohibits states from enacting any law which imposes a punishment for an act which was not punishable at the time it was committed or imposes additional punishment to that then prescribed. *Teer,* 738 N.E.2d at 287; *Spencer,* 707 N.E.2d at 1042. The focus of the ex post facto inquiry is on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. *Teer,* 738 N.E.2d at 287; *Spencer,* 707 N.E.2d at 1042.

 Generally, the statute in effect at the time the underlying offense was committed governs a defendant's proceeding. *See Settle v. State,* 709 N.E.2d 34, 36 (Ind.Ct.App.1999). Here, the statute in effect at the time of Culbertson's actions in February 2001 did not criminalize the maintenance of a place for the manufacture of methamphetamine. Rather, the statute criminalizing such actions did not take effect until July 2001. However, the State charged and the jury was instructed that Culbertson could be found guilty if the State proved, among other alternatives, that he maintained a place that was used to manufacture drugs. There was evidence that Culbertson's property was used for both using and manufacturing methamphetamine. We cannot be certain which evidence the jury relied upon in returning its verdict. Accordingly, Culbertson may have been convicted of a crime that was nonexistent at the time of his conduct. Punishing Culbertson for conduct that was criminalized after his actions constitutes an ex post facto law and violates the state and federal constitutions. Moreover, conviction of a crime that is nonexistent at the time of commission constitutes fundamental error. *Anderson v. State,* 674 N.E.2d 184, 188 (Ind.Ct.App. 1996). Accordingly, we must reverse Cul-

bertson's conviction for maintaining a common nuisance.

Affirmed in part and reversed in part.

MATHIAS, J., concurs.

MAY, J., concurs in part and dissents in part with separate opinion.

MAY, Judge, dissenting.

I fully concur with sections II and III of the majority's opinion, but believe the trial court was correct when it found Culbertson guilty of manufacturing methamphetamine despite the "personal use" language found in Ind.Code § 35–48–4–2 when Culbertson was charged. I must therefore respectfully dissent as to section I of the majority opinion.

When Culbertson was charged, "manufacture" was defined in Ind.Code § 35–48–1–18 as:

> the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. *It does not include the preparation or compounding of a controlled substance by an individual for his own use*[.]

(Emphasis supplied.)

We addressed that "personal use" exception in *Hatcher*, where we noted that our legislature had criminalized possession of chemical reagents or precursors with intent to manufacture methamphetamine. An individual could be found guilty of a Class D felony if he or she were found in possession of two or more of the reagents that go into the manufacture of methamphetamine. We determined the legislature could not have intended to enact a statute allowing one to be subjected to criminal liability for possession of the ingredients of methamphetamine, but to be excluded from liability if the ingredients were used to manufacture the finished product for personal use. 762 N.E.2d at 173.

We noted in *Hatcher* that the legislature had amended the statutory definition of "manufacture" to delete the exclusion for "the preparation or compounding of a controlled substance by an individual for his own use" and determined the amendment "undoubtedly was passed in order to more clearly express the original intent of the legislature." *Id.*

Our Supreme Court denied Hatcher's petition to transfer. 774 N.E.2d 514 (Ind. 2002). Another panel of this court determined in *Bradley*, prior to the denial of transfer in *Hatcher*, that the "clear language" of the statute controlled and that preparation or compounding of a controlled substance for personal use was therefore exempted from the definition of "manufacture." 765 N.E.2d at 211.

I believe our analysis in *Hatcher* was correct, and accordingly would find there was ample evidence to support Culbertson's conviction of manufacturing methamphetamine. I would affirm that conviction as well.