**Stephen L. TRAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 34A05–0402–CR–98.**

Court of Appeals of Indiana.

July 28, 2004.

Brent R. Dechert, Howard County Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Stephen L. Travis appeals his conviction for Criminal Trespass, a Class A misdemeanor, following a bench trial, and challenges the sufficiency of the evidence to sustain his conviction.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On September 2, 2002, Kokomo Police Officer Greg Baldini encountered Travis and other individuals in Studebaker Park "playing dice and gambling." After Travis started "to run his mouth," Officer Baldini "put him on trespass for Studebaker Park"[1] and told him "not to come back." He also told Travis that if he returned to the park, he would be arrested for trespass. The officer then entered in the police record system that he had warned Travis for trespassing on that date.

Two days later, Officer Larkin Fourkiller, along with another officer, was patrolling Studebaker Park when he observed Travis sitting on a park bench. Officer Fourkiller checked with the dispatch and confirmed that Officer Baldini had warned Travis "for trespass" on September 2. After Travis identified himself, Officer Fourkiller arrested him for criminal trespass.

The State charged Travis with criminal trespass, and the parties appeared for a bench trial in October 2003. Officer Baldini was the sole witness at trial, and he testified regarding the events of September 2, 2002. During cross-examination, the trial court asked Officer Baldini what authority he had to place a citizen on the trespass list for a public park, and the officer responded:

1. Officer Baldini explained that placing someone "on trespass" means:

I do a report[;] obviously I notify him that at that time that he's put on trespass [and] not to come back. I do a report and it goes through our record system and then it goes to dispatch, a copy is faxed to dispatch ... and then they enter it into the computer that he's warned for trespass on that date. We interpret "on trespass" to mean placing a person on a trespass list.

I guess I don't know what, if there's an agreement or we've been given authority to put people on trespass in public parks and the public housing and I don't know if that's, I couldn't answer on how actually that transpires to be honest with you. I just know we can do it.

Following Officer Baldini's testimony, Travis' counsel stipulated that Officer Fourkiller had discovered Travis in Studebaker Park on September 4, 2002. However, he argued that Officer Baldini lacked authority to place Travis, or any citizen, on a trespass list for a public park. The trial court took the matter under advisement, and the parties submitted post-trial memoranda. In January 2004, the trial court announced its judgment as follows:

> Mr. Travis[,] your attorney cited a very valid point here and that point is that when you were . . . arrested for trespass you were not performing any illegal activity in the park and the argument is . . . that if you were committing illegal activity that . . . perhaps maybe a city police officer would have the ability to cite you for trespass but when you're not [performing any illegal activity] then the statute would be overly broad and unconstitutionally vague and that is a very good argument. However, I am going to find in favor of the State and the argument that is most compelling with the State is that I believe that city police officers should have the ability to place individuals on trespass who are misusing or committing activities on public property that they're not to be . . . committing, so I am going to find you guilty of trespass.

The court then sentenced Travis to one year of informal probation. This appeal ensued.

## DISCUSSION AND DECISION

■ Travis asserts that the State presented insufficient evidence as a matter of law to sustain his conviction because Officer Baldini lacked authority to place him on a trespass list and ban him from Studebaker Park. In reviewing an appellate claim that the evidence was insufficient, we will not reweigh the evidence or judge the credibility of witnesses. *Culbertson v. State*, 792 N.E.2d 573, 576 (Ind.Ct.App. 2003), *trans. denied.* We examine the evidence most favorable to the judgment and all reasonable inferences that may be drawn therefrom. *Id.* However, the Due Process Clause of the Fourteenth Amendment requires that a defendant be convicted by proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). While we seldom reverse for insufficient evidence, in every case where that issue is raised on appeal we have an affirmative duty to make certain that the proof at trial was, in fact, sufficient to support the judgment beyond a reasonable doubt. *See Bunting v. State*, 731 N.E.2d 31, 35 (Ind. Ct.App.2000). We will sustain a conviction only when each material element of the charge is supported by evidence in the record from which a rational trier of fact could have found guilt beyond a reasonable doubt. *Culbertson*, 792 N.E.2d at 576.

A person who, not having a contractual interest in the property, knowingly or intentionally enters the real property of another person *after having been denied entry by the other person or that person's agent*, commits criminal trespass, a Class A misdemeanor. *See* Ind.Code § 35–43–2–2(a)(1) (emphasis added). Travis concedes that he does not have a contractual interest in Studebaker Park. He also concedes that he knowingly entered the park on September 4 after Officer Baldini, an agent of the City of Kokomo, had told him

not to return.[2] But Travis contends that Officer Baldini lacked authority to place him on a trespass list and ban him from the park. As a result, he maintains that he lawfully entered the park on September 4 and that the State did not prove an essential element of criminal trespass, namely, that he .entered the park after having been denied entry by the park or its agent. We must agree with Travis.[3]

■ Indiana Code Section 36–8–3–6 sets forth the powers and duties of police officers. That statute does not authorize police officers to place persons on a trespass list or ban persons from a public park. Indeed, the State directs us to no statute, and our research reveals none, which authorizes a police officer to take such action.

Police officers must enforce municipal ordinances. *See* I.C. § 36–8–3–6(c)(3). And the relevant provisions of the City of Kokomo Municipal Code provide:

> No person shall engage in any game of chance or in the use of any gambling device nor shall any person tell fortunes for pecuniary reward.
>
> * * *
>
> *Persons acting unlawfully to be removed from park.* No person shall remain within the park who does not abide by conditions adopted and posted by the Board for the preservation of good order and the protection of property within the park, and no person shall remain in ... the park who does not abide by the instructions and directions of duly authorized park rangers, employees, or agents of the Board, in the lawful performance of their duties. Any person directed by a park ranger, employee, or agent of the Board to leave the parks, shall do so promptly and peaceably.
>
> * * *
>
> No person shall fail or refuse to comply with ... any other order lawfully given by any park personnel or law enforcement officer acting under the authority of the Board....

Municipal Code of the City of Kokomo, Section 96.19(G), (K), and (M) (emphasis original). Our review of those provisions reveals that a police officer is authorized to order a person to leave a city park when that person does not abide by park rules.[4] But, again, Kokomo's Municipal Code does not authorize a police officer to place a person on a trespass list or to ban someone from a park indefinitely.

Still, the State maintains that "the trespass statute by its provisions reflects that its prohibitions are permanent in nature." It points out that a person has been denied entry under subdivision (a)(1) of the trespass statute when the person has been denied entry by means of personal communication, oral or written. *See* I.C. § 35–43–2–2(b)(1). Based on that definition, the State suggests that any oral or written denial of entry must necessarily be permanent. In other words, the State maintains that Officer Baldini not only acted within his authority when he told Travis to leave

---

**2.** The State incorrectly asserts that Travis disputes whether Officer Baldini acted as an agent of the City of Kokomo. Travis concedes that the officer .was an agent of the City.

**3.** Travis does not raise constitutional challenges to either the trespass statute or any of the relevant ordinances. He notes, however, that "[h]ad the City of Kokomo enacted ... an ordinance which gave a police officer the unfettered discretion to ban individuals from public parks, [he] would be challenging the law."

**4.** If a person commits a crime in a public park, as opposed to violating a park rule, a police officer would be authorized to arrest the person. *See* Ind.Code § 36–8–3–6(c)(2) (powers and duties of police include arresting all persons who violate statutes).

because he was gambling, but also that, under the trespass statute, the officer's oral denial of entry was tantamount to a permanent injunction.

If this case had involved a private property owner who had told Travis to leave his property and Travis had returned two days later, we would agree with the State that all the elements of criminal trespass under Indiana Code Section 35–43–2–2(a)(1) would be met. While a private property owner may ban a person from his property permanently, the powers of police officers are limited by statute. *See generally* Ind.Code § 36–8–3–6 (listing powers and duties of police officers); Ind.Code § 36–8–3–10 (listing powers and duties of police departments). As we have already explained, the State directs us to no statute which authorizes a police officer to enjoin a citizen from visiting a public park. The State's interpretation of the trespass statute applied to these facts would confer powers on Officer Baldini beyond those expressly granted by statute.

In sum, Officer Baldini acted within his authority on September 2 when he told Travis to leave the park because he was gambling. *See* I.C. § 36–8–3–6(c)(3) (authorizes police officers to enforce municipal ordinances); *see also* Municipal Code of the City of Kokomo, Section 96.19(K). Had Travis refused to leave the park at that time, the officer could have arrested him for criminal trespass. *See* Ind.Code § 35–43–2–2(a)(2) (stating person who, not having contractual interest in property, knowingly or intentionally refuses to leave the real property of another after having been asked to leave by other person's agent commits trespass). But because Kokomo police officers lack authority to place citizens on a trespass list or to ban citizens from the park indefinitely, Travis legally entered the park on September 4. And the undisputed facts show that when Officer Fourkiller encountered Travis that day, Travis was sitting on a park bench and was not engaged in any illegal activity. Absent some illegal act on Travis' part, Officer Fourkiller had no legal grounds to arrest him. We conclude that the State failed to prove beyond a reasonable doubt that Travis entered the park after having been denied entry by the park or its agent, which is an essential element of criminal trespass. We can affirm a conviction only when each material element is supported by evidence from which the trier of fact could have found guilt beyond reasonable doubt. *See Culbertson*, 792 N.E.2d at 576. There was no factual or legal basis for Travis' arrest. Therefore, we must reverse the conviction.

Reversed.

KIRSCH, C.J., and RILEY, J., concur.