[Cite as *In re B.J.M.*, 2017-Ohio-8202.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| B.J.M., DELINQUENT CHILD | | |
| | : | |
| | | **CASE NO. 2017-L-007** |
| | : | |

Juvenile Appeal from the Lake County Court of Common Pleas, Juvenile Division, Case No. 2015 DL 01773.

Judgment: Reversed.

*Charles E. Coulson,* Lake County Prosecutor, *Karen A. Sheppert,* Assistant Prosecutor, and *Eric J. Foisel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee, State of Ohio).

*Charles R. Grieshammer,* Lake County Public Defender, and *Vanessa R. Clapp,* Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Appellant, B.J.M.).

DIANE V. GRENDELL, J.

{¶1} Delinquent child-appellant, B.J.M., appeals his adjudication for acts constituting Criminal Trespass in the Lake County Court of Common Pleas, Juvenile Division. The issue before this court is whether a police officer may, at his discretion, revoke a juvenile's privilege to enter and remain in a municipality's public parks when the juvenile has been involved in repeated disturbances at the parks. For the following reasons, we reverse the decision of the juvenile court.

**{¶2}** On November 25, 2015, a Complaint was filed in juvenile court alleging that B.J.M. committed Criminal Trespass, a misdemeanor of the fourth degree, if committed by an adult, in violation of R.C. 2911.21(A)(3).

**{¶3}** On January 7, 2016, a plea hearing was held and a plea of not true was entered on the charge.

**{¶4}** On March 1, 2016, trial was held on the matter before a magistrate. The following testimony was presented.

**{¶5}** Officer Greg Williams of the Willowick Police Department testified that, on August 2, 2015, he was called to Dudley Park in response to a report of an argument between a pedestrian and occupants of a vehicle. After arriving at the park, Officer Williams had occasion to speak with B.J.M. He advised him "that he was no longer allowed in any of the parks of the city" since he "and his friends have been causing issues at the parks or in and around that area for the past several weeks." Officer Williams further advised B.J.M. that if, during the remainder of the calendar year, "he's found in any park in the City of Willowick, * * * Dudley, Manry, Roosevelt, if he's found on any of the properties he'll be cited for trespassing."

**{¶6}** Officer Williams subsequently advised B.J.M.'s father of the same.

**{¶7}** On August 14, 2015, Officer Williams was called to Dudley Park in response to a report that "there was a group of kids by the basketball courts that were either talking about fighting or trying to start a fight." B.J.M. was among a group of juveniles "over by the basketball courts * * * being loud and rambunctious." Officer Williams cited him for Trespassing.

**{¶8}** Officer Keith Lawrence of the Willowick Police Department testified that, on August 2, 2015, he responded to the reported disturbance in Dudley Park with

2

Officer Williams. He testified that the decision to ban B.J.M. from the municipal parks was based on a number of issues: "there [were] occasions where he was reported throwing rocks at another individual, smoking, * * * prior disturbances [involving] a group of juveniles being rowdy or wanting to fight."

{¶9} Officer Lawrence again responded to Dudley Park on August 14, 2015, but did not witness any disturbance.

{¶10} At the close of the testimony, counsel for B.J.M. made a "Rule 29 motion to dismiss for insufficient evidence," which the magistrate denied.[1]

{¶11} On March 1, 2016, a Magistrate's Decision was issued, and was disapproved by the juvenile court on the same day ("[t]he Court * * * finds that the Decision ought not to be adopted").

{¶12} On March 3, 2016, an Amended Magistrate's Decision was issued, finding the charge true, and approved by the juvenile court. B.J.M. was ordered to be placed on Community Control; to serve a 90-day suspended sentence in the Lake County Juvenile Detention Facility; to stay out of Willowick Parks pending further order; to continue with counseling; and to continue on probation.

{¶13} On January 13, 2017, B.J.M. sought leave of this court to file a delayed appeal, which we granted on April 5, 2017.

{¶14} On appeal, B.J.M. raises the following assignment of error:

---

1. Presumably, the reference is to Criminal Rule 29, inasmuch as "[t]he Rules of Juvenile Procedure do not have a rule that is analogous to Crim.R. 29(A), which mandates the trial court to enter a judgment of acquittal if the state fails to provide sufficient evidence to support the charged offense." *In re Whitlock*, 11th Dist. Ashtabula No. 2008-A-0018, 2008-Ohio-4672, ¶ 8, fn. 2. Regardless of whether Criminal Rule 29 applies in juvenile proceedings, due process requires that delinquency adjudications be supported by sufficient evidence, as explained below. *Compare In re J.J.*, 9th Dist. Summit No. 21386, 2004-Ohio-1429, ¶ 5, and *In re A.K.*, 2d Dist. Montgomery No. 21504, 2007-Ohio-2095, ¶ 18.

{¶15} "[1.] The trial court erred in denying the juvenile's motion for acquittal on a charge of Criminal Trespass where the State failed to prove that the juvenile was 'without privilege' to enter a city park based upon a police officer's unilateral order banning the juvenile from city park grounds."

{¶16} "A juvenile court proceeding is a civil action," to which there are "criminal aspects," and must comply with "basic due process requirements." *In re Anderson*, 92 Ohio St.3d 63, 65-66, 748 N.E.2d 67 (2001), syllabus. Among these is the requirement "that the state must prove its case against a juvenile beyond a reasonable doubt." *Id.* at 66; Juv.R. 29(E)(4) ("the court shall * * * [d]etermine the issues by proof beyond a reasonable doubt in juvenile traffic offense, delinquency, and unruly proceedings"). "[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a defendant in a criminal case against a conviction '* * * except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" (Citation omitted.) *State v. Jenks*, 61 Ohio St.3d 259, 263, 574 N.E.2d 492 (1991). Stated otherwise, "a conviction based on legally insufficient evidence constitutes a denial of due process." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶17} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond reasonable doubt." *Id.*

4

{¶18} In order to adjudicate B.J.M. delinquent of committing acts which, if committed by an adult, constitute the crime of Criminal Trespass, the State was required to prove that B.J.M., on or about August 14, 2015, and "without privilege to do so," recklessly entered or remained on the premises of the City of Willowick/Dudley Park, as to which notice against unauthorized access or presence was given by actual communication. R.C. 2911.21(A)(3).

{¶19} The determinative issue for the purposes of this appeal is whether B.J.M. lacked privilege to be in Dudley Park on August 14, 2015. This issue turns on whether Officer Williams could revoke such privilege.

{¶20} It is generally recognized that "a person has a privilege to enter and be upon the public areas of public property." *Cleveland v. Dickerson*, 8th Dist. Cuyahoga Nos. 101782 and 101783, 2016-Ohio-806, ¶ 21. The United States Supreme Court has recognized that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment." *Chicago v. Morales*, 527 U.S. 41, 53, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler*, 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996); Ohio Constitution, Article I, Section 16; U.S. Constitution, Fourteenth Amendment.

{¶21} The determinative issue on appeal is whether, on August 2, 2015, Officer Williams had the authority to revoke B.J.M.'s privilege to enter and be upon municipal park property for one year. We conclude that he did not.

5

**{¶22}** At the beginning of our analysis, we emphasize that the State has not cited to any authority, ordinance, statute or rule whereby a police officer may ban a person from using a public park; nor is this court aware of such authority.

**{¶23}** The State does cite to *Cleveland v. Dickerson*, 2016-Ohio-806, for the proposition that "[p]olice officers have authority to revoke privilege on public land." Appellee's brief at 7. The *Dickerson* case, however, is distinguishable from the present one and does not address whether police officers may ban persons from entering public property. In *Dickerson*, the defendants-appellants were found guilty of criminal trespass after they were asked to leave Cleveland Hopkins International Airport and refused to do so. The court of appeals found "that[,] while the appellants had the privilege to enter the public airport for the purposes of using its restroom facilities, that privilege was not indefinite and was revoked once the officers separately asked Dickerson and Hendon to leave the property." *Id.* at ¶ 23. The court further pointed out "that Dickerson and Hendon were only asked to leave the airport after they used the public restrooms and no longer had a 'legitimate basis' to be in the baggage area of the airport." *Id.* at ¶ 27.[2]

**{¶24}** In the present case, B.J.M. committed the trespass by entering Dudley Park contrary to Officer Williams' command not to enter municipal parks for a year.[3] The *Dickerson* case would apply to the situation on August 2, 2015, when officers

---

2. Willowick does not have a loitering ordinance and the State acknowledges that "B.J.M. has a right to loiter for innocent purposes." Appellee's brief at 8. To repeat, the issue is whether Officer Williams has the authority to revoke that right.

3. Thus, the defendants in *Dickerson* were charged under the Cleveland municipal ordinance corresponding to R.C. 2911.21(A)(4), which prohibits "[b]eing on the land or premises of another * * * [or] refus[ing] to leave upon * * * being notified to do so by the owner or occupant, or the agent or servant of either." B.J.M., in contrast, was cited for violating subsection (A)(3) which applies when a person enters the land of another "as to which notice against unauthorized access or presence is given." The court in *Dickerson* even qualified its holding with respect to subsection (A)(4) by emphasizing "that our holding does not stand for the proposition that a criminal trespass conviction will always be upheld once the general privilege to enter public property is revoked and the defendant refuses to leave." 2016-Ohio-806, at ¶ 28.

6

expelled B.J.M. from the park for causing a disturbance. On August 14, 2015, B.J.M. was not cited or expelled for causing a disturbance, but was cited for being present on public property contrary to Officer Williams' August 2 command. Thus, the *Dickerson* case does not establish Officer Williams' authority to revoke the privilege of being in public parks, regardless of whether there is a legitimate purpose, for a given period of time.

{¶25} The State also relies on the case of *State v. Craft*, 4th Dist. Athens No. 97 CA 53, 1998 WL 255442 (May 14, 1998), wherein the defendant was convicted of criminal trespass after being advised by university police officers that he was not allowed to enter university property. The court of appeals upheld the conviction on the grounds "that OUPD officers, agents of the Ohio University Board of Trustees, provided actual notice to appellant that he was not permitted to enter the campus grounds." *Id.* at *8.

{¶26} We find *Craft* distinguishable in that the right of access to the grounds of a public university is subject to greater restriction than the right of access to a public park. In *Craft*, the prosecution noted a committee comment to the trespass statute that it is "well-settled that property owned by a state or political subdivision is not automatically open to all members of the public, but is subject to limitations on access and use which are reasonable in light of its purpose." *Id.* at *2. Additionally, university trustees are authorized by statute to "adopt rules for the conduct of the students, faculty, visitors, and staff, and * * * provide for the ejection from college or university property, suspension or expulsion of a person who violates such regulations." R.C. 3345.21. The defendant in *Craft* was not a student and had previously violated university regulations.

7

The court noted that "[n]o evidence exists in the stipulated facts to indicate that appellant had any legitimate purpose to enter the university grounds." *Id.* at *8.

**{¶27}** B.J.M. relies heavily on the case of *State v. Shelton*, 63 Ohio App.3d 137, 578 N.E.2d 473 (4th Dist.1989). The defendant in *Shelton* had been advised that she would be arrested for trespassing if she continued to visit the public lobby of the sheriff's office "because she was a nuisance." *Id.* at 139. With minimal discussion, the court noted that the defendant "did not enter a restricted area and did not refuse to leave," but had the privilege of entering the lobby revoked for being a nuisance. *Id.* at 139-140. The court concluded that this was insufficient justification for a county official to revoke her privilege. *Id.* at 140.

**{¶28}** B.J.M. also relies on *Kennedy v. Cincinnati*, 595 F.3d 327 (6th Cir.2010), a Section 1983 civil rights action in which the plaintiff was issued a no-trespass warning, effectively barring him from Cincinnati Recreation Commission properties. The officer who issued the warning acknowledged that he lacked any reasonable suspicion of criminal activity by the plaintiff but was requested to issue the warning because the plaintiff's conduct, staring at children, was making parents feel uncomfortable. *Id.* at 332. The plaintiff complied with the warning but filed suit alleging the infringement "of his liberty interest to enter certain public spaces, as guaranteed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 335.

**{¶29}** The circuit court concluded that the plaintiff had, for summary judgment purposes, established a constitutional violation. "Any competent government official, particularly a police officer, should have realized that he cannot deprive a person, who has not committed a crime or violated some regulation, nor was likely to do so, of access to public grounds without due process of law." *Id.* at 335.

8

{¶30} In a similar but distinguishable case, *Kelly v. Mentor*, 11th Dist. Lake No. 2001-L-066, 2002-Ohio-7342, this court considered a no-trespass order issued by the "Director of Parks, Recreation and Public Lands, banning [the plaintiff] from entering the Mentor Civic Arena for five years." *Id.* at ¶ 1. The ban was based on the plaintiff's conduct in threatening the coaches of the municipal hockey team. *Id.* at ¶ 6. The plaintiff filed suit "seeking a declaratory judgment that appellant's actions had deprived him of due process of law and seeking an injunction prohibiting appellant from enforcing its ban on him." *Id.* at ¶ 9.

{¶31} This court acknowledged the municipal official's "authority to maintain, operate, and police its facilities," but held that such official was not "given unilateral authority to gather evidence, hold quasi-judicial proceedings, punish patrons for bad behavior, or prohibit someone from entering the public properties under his control." *Id.* at ¶ 33 and 28. Rather, this court observed that "the offender should be charged with disorderly conduct or menacing, or another appropriate charge." *Id.* at ¶ 33. And "[i]f [the municipality] wished to prevent an offender from entering its property, it could secure a restraining order" or "adopt rules governing the conduct of persons in the arena and delegate the authority to enforce those rules." *Id.*

{¶32} While none of the precedents cited are controlling, we conclude that, although a municipality has authority to ban persons from using public property and may delegate such authority to its agents, including police officers, due process requires that such persons have a meaningful opportunity to be heard and to contest the decision. B.J.M. in the present case was not afforded an opportunity to do so and, therefore, his privilege to enter Willowick public parks was not properly revoked. It follows that there

9

was insufficient evidence to adjudicate him delinquent for acts constituting Criminal Trespass.

**{¶33}** We note that this holding applies to the categorical expulsion of persons from public property otherwise open to the general public. With respect to property designated for a particular purpose, such as an airport or school, for which access may be conditioned on visitors having a legitimate purpose, a different conclusion could apply. Nor does this holding apply to situations where police officers remove persons from public property on a given occasion to maintain order or when they could otherwise be cited or charged with causing a disturbance, as happened with B.J.M. on August 2, 2015.[4]

**{¶34}** The State maintains that the trespass warning was reasonable in light of B.J.M.'s prior citations and repeated complaints about juveniles causing disturbances in municipal parks when B.J.M. was present. With respect to the due process analysis, however, the reasonableness of B.J.M.'s expulsion is not the determinative issue, but rather whether B.J.M. was afforded a meaningful opportunity to contest its reasonableness. He was not afforded such an opportunity. From the record before us, Officer Williams' decision to ban B.J.M. from municipal parks was not made according to rule, statute, regulation, or even informal policy. The criteria for banning B.J.M. appears to be nothing more than what Officer Williams found reasonable under the circumstances. While Officer Williams orally communicated the decision to both B.J.M.

---

4. Compare R.C. 737.11: "The police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of the municipal corporation, all criminal laws of the state and the United States, all court orders issued and consent agreements approved pursuant to sections 2919.26 and 3113.31 of the Revised Code, all protection orders issued pursuant to section 2903.213 or 2903.214 of the Revised Code, and protection orders issued by courts of another state, as defined in section 2919.27 of the Revised Code."

and his father, such notice was not for the purpose of affording B.J.M. an opportunity to be heard.

{¶35} Our decision in the present case is consistent with the decisions of other jurisdictions in similar factual situations. *See Anthony v. State*, 209 S.W.3d 296, 303-308 (Tex.App.2006) (municipality's "unwritten policy delegate[ing] to individual [police] officers the authority to issue [criminal trespass] warnings, banning individuals from the park * * * [at] the discretion of the individual officer" was unconstitutionally vague and violated procedural due process); *Travis v. State*, 812 N.E.2d 826, 830 (Ind.App.2004) ("[i]f this case had involved a private property owner who had told Travis to leave his property and Travis had returned two days later, we would agree with the State that all the elements of criminal trespass * * * would be met"; however, "[w]hile a private property owner may ban a person from his property permanently, the powers of police officers are limited by statute" and "the State directs us to no statute which authorizes a police officer to enjoin a citizen from visiting a public park").

{¶36} The sole assignment of error is with merit.

{¶37} For the forgoing reasons, the Judgment of the Lake County Juvenile Court, adjudicating B.J.M. delinquent for acts constituting Criminal Trespass, is reversed. Costs to be taxed against the appellee.


TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.